In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3281

Equal Employment Opportunity Commission,

Plaintiff-Appellant,

v.

Humiston-Keeling, Inc., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 5654--George W. Lindberg, Judge.

Argued February 24, 2000--Decided September 15, 2000

Before Cudahy, Posner, and Evans, Circuit Judges.

Posner, Circuit Judge.  The district court granted summary judgment for the defendant in this suit by the EEOC under the Americans with Disabilities Act, 42 U.S.C. sec.sec. 12101 et seq. The Commission's brief states the issue on appeal clearly though, as we shall see, incompletely: "whether the summary judgment evidence, viewed most favorably to the EEOC, would permit a jury to find that Humiston-Keeling violated the ADA by reassigning Nancy Cook Houser to a warehouse job that did not offer a meaningful equal employment opportunity, and refusing to reassign her to an equivalent vacant clerical position that she was qualified to perform consistent with her physical limitations."

Houser worked as a picker in a warehouse, where her duty was to carry pharmaceutical products from a shelf to a conveyor belt. The job required frequent lifting of as much as five pounds. An accident at work led to very bad lateral epicondylitis (better known as "tennis elbow") in her right arm, as a result of which she could not use that arm to lift the items that her job required her to be able to lift. We may assume without having to decide that this impairment was a sufficiently significant restriction of a major life activity to count as a disability within the meaning of the statute (although we have our

doubts, see, e.g., Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 675 (7th Cir. 1998); Hughes v. Bedsole, 48 F.3d 1376, 1388-89 (4th Cir. 1995); Snow v. Ridgeview Medical Center, 128 F.3d 1201, 1207 (8th Cir. 1997), and especially Howard v. Navistar Int'l Transportation Corp., 904 F. Supp. 922, 927-28 (E.D. Wis. 1995), aff'd, 107 F.3d 13 (7th Cir. 1997)), thus placing on her employer, the defendant, the duty to find if possible a "reasonable accommodation" of Houser's disability that would enable her to remain in the company's employ. 42 U.S.C. sec. 12112(b)(5)(A). Such an accommodation can take various forms, such as making the workplace accessible to a person who is wheelchair-bound, or, of particular pertinence here, "reassignment [of the disabled person] to a vacant position." sec. 12111(9)(B).

Houser's employer recognized its obligation to attempt a reasonable accommodation of her disability and endeavored to discharge its obligation in several ways successively. First, it rigged an apron for Houser in such a way that (it hoped) she could carry items from the shelf to the conveyor belt with just her left arm. She gave up on this after a few hours and there is a dispute over whether she gave it a fair shot but we'll assume she did. The EEOC doesn't think the "one-arm picker" accommodation was "meaningful." That is too strong. It was a failed experiment, undertaken in good faith so far as appears and not obviously doomed to fail from the start, as in Haschmann v. Time Warner Entertainment Co., 151 F.3d 591, 602 (7th Cir. 1998). Experimentation should not be discouraged by deeming, with the wisdom of hindsight, an experiment that fails unreasonable per se, which seems to be the Commission's view.

But it is a separate question whether, the experiment having failed, the employer was excused from further efforts to accommodate Houser's disability. We may assume that the employer was not excused. But the further efforts did not have to take the form of a further effort to enable Houser to do picking with only one arm. Indeed, the EEOC asserts that such an effort would have been futile: "nor does the evidence indicate," we read in its brief, that "any such modification [that is, any modification that would enable her to keep up with the assembly line] exists." Any further attempt at accommodation would have to take the form of a reassignment. And indeed, immediately upon the failure of the "one-arm picker" attempt at accommodation, Houser's employer offered her, and she accepted, a substitute accommodation that the EEOC acknowledges was reasonable--a light job as a greeter to visitors to a company construction

site. That job disappeared, however, when the construction was completed, precipitating the most important issue presented by the appeal. The company had several vacant clerical positions for which Houser was qualified in the sense of having at least the minimum qualifications for the position. She applied for these positions but in each case was turned down in favor of another applicant, and as a result was eventually let go by the company.

The EEOC does not deny that in every case the applicant chosen for the job was better than Houser in the sense of likely to be more productive. Nor does it deny that the company had a bona fide policy, consistently implemented, of giving a vacant job to the best applicant rather than to the first qualified one. Nor does it suggest that Houser's disability played any role in the decisions favoring her competitors. None of the jobs involved a degree of lifting that her disability would have interfered with her performing, and it is not suggested that the defendant harbors any animus toward disabled workers. Rather the Commission interprets the "reassignment" form of reasonable accommodation to require that the disabled person be advanced over a more qualified nondisabled person, provided only that the disabled person is at least minimally qualified to do the job, unless the employer can show "undue hardship," a safe harbor under the statute. sec. 12112(b)(5)(A); Vande Zande v. Wisconsin Dept. of Administration, 44 F.3d 538, 542 (7th Cir. 1995). The fact that the disability isn't what makes the disabled person unable to perform the job as well as the person who got it is, in the Commission's view, irrelevant.

We do not agree with the Commission's interpretation of the statutory provision on reassignment. The interpretation requires employers to give bonus points to people with disabilities, much as veterans' preference statutes do. Houser's disability, we repeat, had nothing to do with the office jobs for which she applied. The Commission asserts that her unrelated disability, a disability that put her at no disadvantage in competing for an opening in an office job, nevertheless entitled her to be given more consideration than nondisabled workers. It is easy to imagine situations in which under the Commission's view one disabled worker would be entitled to get a job ahead of a worker with a more serious disability. Suppose that A and B are both applying for the same job, Job X. A was severely disabled years ago and placed in an office job with the company. B was less severely disabled, and not being able to work in his present job has also applied for X. A

is not only more severely disabled than B; he is also, let us assume, certain to perform the job much better than B, although B meets the minimum qualifications for the job. Under the Commission's view, B is entitled to the job.

Or suppose, to take a variant case, that B is a 29-year-old white male with severe tennis elbow, just like Houser, and A is a 62-year-old black woman with no disability, and again they are applying for the same job. Under the Commission's view, even though A is not only the better applicant but also a member of one of the minority groups that the laws administered by the EEOC are supposed to be protecting, B, the white male, is entitled to the job. Thus on the Commission's view there is a hierarchy of protections for groups deemed entitled to protection against discrimination, with the disabled being placed ahead of the members of racial minorities.

The Commission thinks these odd and counterintuitive results compelled by the structure of the statute. If all that Houser's employer had to do by way of a reasonable accommodation was to allow Houser to compete for jobs for which she was qualified and to obtain any job for which she was the best applicant, what is left of the duty to reassign a disabled worker to a vacant position? Plenty is left. Without the reassignment provision in the statute, an employer might plausibly claim that "reasonable accommodation" refers to efforts to enable a disabled worker to do the job for which he was hired, or for which he is applying, rather than to offer him another job. The reassignment provision makes clear that the employer must also consider the feasibility of assigning the worker to a different job in which his disability will not be an impediment to full performance, and if the reassignment is feasible and does not require the employer to turn away a superior applicant, the reassignment is mandatory. That is not the same thing as requiring the employer to give him the job even if another worker would be twice as good at it, provided only that this could be done without undue hardship to the employer.

The Commission presses on us two recent en banc decisions in other circuits, Smith v. Midland Brake, Inc., 180 F.3d 1154, 1164-68 (10th Cir. 1999); Aka v. Washington Hospital Center, 156 F.3d 1284, 1303-05 (D.C. Cir. 1998); see also Davoll v. Webb, 194 F.3d 1116, 1131-32 (10th Cir. 1999) (following Smith). Aka is distinguishable. It does not address the situation in which a nondisabled person is the superior applicant for the job to which the disabled person seeks reassignment and the employer has a consistent

policy of preferring the best candidate for a vacancy rather than merely hiring the first qualified person to apply, as is often done for routine low-skilled jobs. The court assumed that the alternative to a duty to reassign a person who is minimally qualified is a duty of the employer just to "consider" the person for the job, with no obligation actually to reassign him even if there is no competing applicant, let alone one no better than the disabled person. On that assumption the statute's provision that reassignment can be a mandatory accommodation would indeed be meaningless. Aka merely rejects an "interpretation of the reassignment provision as mandating nothing more than that the employer allow the disabled employee to submit his application along with all of the other candidates," an interpretation that the court thought "would render that provision a nullity." 156 F.3d at 1305. That is not the same thing as holding that the employer must pass over the superior applicant who, as we have emphasized, might himself or herself be disabled or belong to some other protected class.

The Tenth Circuit cases are not distinguishable from the present case, but they are inconsistent with decisions of this court that hold that the Americans with Disabilities Act is not a mandatory preference act. In Dalton v. Subaru-Isuzu Automotive, Inc., supra, 141 F.3d at 679, we held that an employer is not required "to reassign a disabled employee to a position when such a transfer would violate a legitimate, nondiscriminatory policy of the employer. . . . The contrary rule would convert a nondiscrimination statute into a mandatory preference statute, a result which would be both inconsistent with the nondiscriminatory aims of the ADA and an unreasonable imposition on the employers and coworkers of disabled employees." A policy of giving the job to the best applicant is legitimate and nondiscriminatory. Decisions on the merits are not discriminatory. See also Malabarba v. Chicago Tribune Co., 149 F.3d 690, 699-700 (7th Cir. 1998), where we said that "the ADA does not mandate a policy of 'affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled person be given priority in hiring or reassignment over those who are not disabled,'" and Matthews v. Commonwealth Edison Co., 128 F.3d 1194, 1196 (7th Cir. 1997), where we said that "the Americans with Disabilities Act does not command affirmative action in hiring or firing."

It is true that antidiscrimination statutes impose costs on employers. That is obvious in disparate-impact cases, when the employer is told to change a policy that may not have been adopted

for discriminatory reasons (though that is its effect) and so presumably is efficient. The duty of accommodation operates in a similar way. It requires the employer to incur (if it need be) an expense rather than just to desist from invidious discrimination. The requirement is implicit in the ADA's creating an "undue hardship" safe harbor for employers; the safe harbor would be otiose if the employer's only duty were to stop doing something.

But there is a difference, one of principle and not merely of cost, between requiring employers to clear away obstacles to hiring the best applicant for a job, who might be a disabled person or a member of some other statutorily protected group, and requiring employers to hire inferior (albeit minimally qualified) applicants merely because they are members of such a group. That is affirmative action with a vengeance. That is giving a job to someone solely on the basis of his status as a member of a statutorily protected group. It goes well beyond enabling the disabled applicant to compete in the workplace, or requiring the employer to rectify a situation (such as lack of wheelchair access) that is of his own doing. Cf. City of Richmond v. J.A. Croson Co., 488 U.S. 469, 505 (1989).

We have assumed thus far that had Houser gotten one of the office jobs for which she applied, it would have been a lateral move rather than a promotion. The EEOC acknowledges that an employer doesn't have to give a disabled employee a promotion in order to satisfy the duty of reasonable accommodation. Malabarba v. Chicago Tribune Co., supra, 149 F.3d at 699; Dalton v. Subaru-Isuzu Automotive, Inc., supra, 141 F.3d at 679; Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996). Promotions are a subset of reassignments. A promotion is merely a reassignment to a better job--and so the Commission's concession shows that even the Commission does not interpret the duty of reassignment literally.

The district court found that the office jobs were indeed better; the work was less strenuous and paid more; and so what Houser didn't receive was indeed a promotion. Economists since Adam Smith have taught that part of a wage is compensation for whatever disamenities the job involves. The work of a picker is tedious and involves considerably more physical exertion than that of a clerical worker, so that if each is paid the same, it is a reasonable inference that the clerical job is better because the wage net of the compensating differential (the part of a wage that compensates for some disamenity of the job), which is what counts, is higher. Miller v. Illinois Dept. of Corrections, 107 F.3d 483, 486

(7th Cir. 1997), and references cited there. No doubt some people prefer the more strenuous job, perhaps to control their weight, perhaps because they find desk jobs insufferably boring; but it seems a fair generalization that most desk jobs are "better" in the sense we're using than factory or other physically demanding jobs that pay no more, other things being equal. But here other things may not have been equal. There was some evidence that the warehouse jobs provide much superior opportunities for overtime work, which, in part because the wage for such work cannot under the law be less than 50 percent higher than the normal wage, may be a distinct plus for many workers, erasing the other considerations to which we've been pointing. There is enough doubt on this record about the superiority of the office jobs for which Houser applies to make us prefer to rest decision on the alternative ground that the ADA does not require an employer to reassign a disabled employee to a job for which there is a better applicant, provided it's the employer's consistent and honest policy to hire the best applicant for the particular job in question rather than the first qualified applicant.

Affirmed.