In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-4227

MAXCENE MAYS,

*Plaintiff-Appellant,*

v.

ANTHONY J. PRINCIPI, Secretary of Veterans Affairs,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 1418—**Suzanne B. Conlon,** *Judge.*

ARGUED MAY 28, 2002—DECIDED SEPTEMBER 5, 2002

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* This is an appeal from the grant of summary judgment to the defendant, the Veterans Administration, in a suit under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, the counterpart for federal agency defendants to the employment provisions of the subsequently enacted Americans with Disabilities Act. The plaintiff, a nurse at a VA hospital, injured her back helping to lift a 400-pound patient. After some weeks off work she returned to duty as a light-duty nurse, a temporary position (rather than a regular part of the hospital's table of organization) requiring less strength than the regular

nursing job the plaintiff had had when she was injured. A year and a half later she was removed from the light-duty job for reasons unrelated to her injury. Shortly before that a physician had opined that the injury was permanent and had restricted her (in the words of her opening brief in this court) to "sedentary work, maximum lifts of 10 pounds, no work at or above shoulder level, and no patient lifting," but added that she could return to her job as a light-duty nurse. The light-duty nurse position having evaporated (and the hospital not obliged to recreate it, that is, to "manufacture a job that will enable the disabled worker to work despite his disability," *Hansen v. Henderson*, 233 F.3d 521, 523-24 (7th Cir. 2000)), the hospital assigned her to a clerical support position that paid a much lower salary although, with the workers' compensation that she received for her injury, her after-tax income was (and, so far as appears, will continue to be) the same as when she had been a nurse. She complains that in reassigning her to the clerical job the VA failed to provide a proper accommodation for her disability.

Originally she was complaining about racial discrimination as well and this has given rise to a procedural issue pressed by the VA. The plaintiff had filed separate administrative complaints with regard to racial discrimination and to disability and had brought this suit after the denial of her racial-discrimination (and a related retaliation) complaint but while her disability complaint was still wending its way through the administrative process. Her initial complaint in the district court did not refer to the administrative disability claim that she had filed, but before the district judge ruled on the VA's motion for summary judgment, the VA denied the plaintiff's administrative disability claim on the ground that it was the subject of her lawsuit.

The suit was not premature, even though filed before her administrative complaint was denied, because she had waited the required 180 days after filing that complaint before suing. 29 C.F.R. § 1614.407(b). The VA argues that her initial complaint in the district court should have referred to the administrative disability complaint to make clear that she had "exhausted" her administrative remedies by waiting 180 days before suing (we put the word in scare quotes because the right to sue is absolute after 180 days even if the agency is still mulling over whether to grant the individual some administrative remedy). We cannot see what difference that omission could have made. The VA can't complain about being surprised; it denied the administrative complaint *because* the subject of that complaint was the subject of her suit, and so it had to know about the relation between the administrative and judicial complaints. And if it was surprised, so what? It won in the district court and does not argue that it could defend against the plaintiff's appeal more effectively if only she had mentioned the administrative complaint at the outset of the suit. And anyway when it received the judicial complaint, the VA would as a matter of ordinary prudence, and doubtless did, search its records to make sure the plaintiff had filed an administrative complaint at least 180 days before suing, since otherwise the suit would be premature.

The VA further argues that the plaintiff cannot complain about any violation of the Rehabilitation Act that occurred before December 5, 1999, because to challenge a personnel action as a violation of the Act an employee must contact a designated employment discrimination counselor "within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The action of which the plaintiff is complaining is being assigned to the clerical job, and that occurred on November 16 and, according to the VA, she

did not contact the counselor until 45 days after December 5 (so January 19, though oddly the VA does not indicate the date). The plaintiff contends, however, that she contacted the counselor on December 16, which if so placed the job assignment that she claims violated the Act well within the 45 days. As the dispute cannot be resolved on the present record, she gets the benefit of the doubt.

We move on to the substantive issues, where an initial puzzle is the silence of the briefs and the district judge on the question whether the plaintiff even *has* a disability within the meaning of the Rehabilitation Act. This has merely been assumed, most surprisingly by the Veterans Administration. A disability within the meaning of the Rehabilitation Act and the Americans with Disabilities Act is a condition that, as we noted recently with reference to the ADA (but the standard under the Rehabilitation Act is the same, *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 122 S. Ct. 681, 689 (2002); *Stein v. Ashcroft*, 284 F.3d 721, 725 n. 2 (7th Cir. 2002); *Silk v. City of Chicago*, 194 F.3d 788, 798 n. 7 (7th Cir. 1999); *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002); *McDonald v. Pennsylvania*, 62 F.3d 92, 94-95 (3d Cir. 1995)), "substantially prevents a person from engaging in one of the major activities of life, such as walking, seeing, or reproduction." *Szmaj v. American Tel. & Tel. Co.*, 291 F.3d 955, 956 (7th Cir. 2002). We doubt whether lifting more than 10 pounds is such an activity. Cf. *Stein v. Ashcroft, supra*, 284 F.3d at 725-26; *Duncan v. Washington Metropolitan Area Transit Authority*, 240 F.3d 1110, 1115 (D.C. Cir. 2001) (en banc); *Snow v. Ridgeview Medical Center*, 128 F.3d 1201, 1207 (8th Cir. 1997); *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, 349 (4th Cir. 1996) (per curiam). It is not as if the plaintiff were missing an arm. Compare *Gillen v. Fallon Ambulance Service, Inc.*, 283 F.3d 11, 23 (1st Cir. 2002). The physician who determined the severity and duration of her back

injury thought she could return to her job as a light-duty nurse. The number of Americans restricted by back problems to light work is legion. They are not disabled. See *Contreras v. Suncast Corp.*, 237 F.3d 756, 762-63 (7th Cir. 2001); *Ray v. Glidden Co.*, 85 F.3d 227, 228-29 (5th Cir. 1996) (per curiam). Any challenge to the plaintiff's claim to be disabled has been forfeited, but we have thought it prudent to register our doubts lest our opinion be assumed by its silence to endorse the proposition that a back injury that merely limits a person's ability to lift heavy objects creates a disability within the meaning of federal disability law.

The plaintiff (assuming as we shall in light of the defendant's forfeiture that she does have a disability) argues that if only the VA had engaged with her in the "interactive process" that federal disability law has been understood to contemplate, see, e.g., *Rehling v. City of Chicago*, 207 F.3d 1009, 1015-16 (7th Cir. 2000); 29 C.F.R. § 1630.2(o)(3)—that is, if only its human-relations or other management-level personnel had made suggestions for accommodating her disability rather than waiting for her to propose something ("consultative process" strikes us as a more perspicuous term than "interactive process")— it would quickly have discovered that her disability could be accommodated as she preferred: either by restoring her to her original nurse's job stripped of its lifting duties, or by assigning her to a nurse's job that involved no contact with patients, that is, a purely administrative position but one requiring knowledge of nursing, unlike the clerical position that she was given.

She acknowledges as she must in light of the cases that "failure to engage in this 'interactive process' cannot give rise to a claim for relief, however, if the employer can show that no reasonable accommodation was possible."

*Hansen v. Henderson, supra,* 233 F.3d at 523. (Similar but more emphatic is *Morton v. United Parcel Service, Inc.,* 272 F.3d 1249, 1256 (9th Cir. 2001); cf. *Ballard v. Rubin,* 284 F.3d 957, 960 (8th Cir. 2002).) We think the best understanding of the brief passage in *Hansen* concerning burden shifting is that the (only) consequence of the employer's failing to consult with the employee concerning a possible accommodation of the employee's disability is to shift the burden of production concerning the *availability* of a reasonable accommodation from the employee to the employer. The plaintiff cannot seek a judicial remedy for the employer's failure to accommodate her disability without showing that a reasonable accommodation existed. But if it existed yet she failed to obtain it because the employer had not consulted her in order that "together they can identify the employee's needs and discuss accommodation options," the fault in the failure to make the accommodation available would be the employer's and he would lose. *Emerson v. Northern States Power Co.,* 256 F.3d 506, 515 (7th Cir. 2001); see also *Ozlowski v. Henderson,* 237 F.3d 837, 840 (7th Cir. 2001). The purpose of the consultative process is to find a reasonable accommodation for the particular disabled employee, and if she proves that such an accommodation existed, that nevertheless she did not receive it, and that there was no consultative process, suspicion arises that the reason her disability was not accommodated was not that she turned down a reasonable accommodation but that the employer failed to explain her options to her and thus did not make it "available" to her in a practical sense. The burden shifts to the employer to produce some evidence that even if he failed to consult or "interact" with her, soliciting her suggestions for a reasonable accommodation, etc., he offered her such an accommodation with sufficient clarity to make the accommodation

available to her in a practical sense, so that her rejecting it was her own fault.

The principal significance of the consultative process is not that the employee is likely to come up with a reasonable accommodation if only she is consulted, but that she is quite likely to turn it down and either quit or sue unless the employer explains why he can't do more to enable her to work despite her disability. That can be presumed from the employer's failure to consult but he can meet the presumption with evidence that he said enough to avoid being blamed for her failure to accept his offer.

The interpretation that we have offered of the burden-shifting consequence of the employer's failure to engage in a consultative process with a disabled employee reconciles our cases with one another and also brings us into harmony with the cases from the other circuits (all but the Ninth) that say that the burden of showing that a reasonable accommodation existed remains on the employee. See *Shapiro v. Township of Lakewood*, 292 F.3d 356, 359-60 (3d Cir. 2002); *Frazier v. Simmons*, 254 F.3d 1247, 1261 (10th Cir. 2001); cf. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 n. 2 (11th Cir. 2001). For present purposes, however, as we are about to see, all that matters is that every court, as far as we know, agrees with *Hansen* that when no reasonable accommodation is possible the failure to jaw about accommodation is harmless. See, e.g., *Kvorjak v. Maine*, 259 F.3d 48, 53 (1st Cir. 2001).

The question whether the employer engaged in the required consultative process and the question whether there was a reasonable accommodation for the plaintiff's condition are often and here intertwined. The less that is available in the employer's enterprise in the way of reasonable accommodations to the employee's particular

disability, the less there is to consult about with a disabled employee seeking an alternative or reconfigured job with the employer. It is evident that with no light-duty nursing positions open our plaintiff could not hold a job that required contact with patients, because, if they are heavy, as so many Americans are, she would not, limited as she is to lifting 10 pounds, be able to support them if they needed help walking (as they often do), to break their falls (which are frequent in a hospital), to help them into and out of bed, or to pick them up from the floor after they have fallen. The hospital could not be required to pair her with another nurse, or an orderly, who would follow her around to help her lift patients. See *Hansen v. Henderson, supra*, 233 F.3d at 523 ("the job that Hansen would like would be a job in which another worker does the sorting, then gives Hansen the mail to case, and then when Hansen has done that carries the cases to the truck, and Hansen then makes just curbside deliveries. . . . Two new jobs would have to be manufactured, one for Hansen and one for his helper. The Act does not require that"); *EEOC v. Amego, Inc.*, 110 F.3d 135, 148 (1st Cir. 1997). There was no reasonable accommodation that would have enabled the plaintiff to return to her old job as a regular staff nurse.

A few nursing jobs, however, do not require patient contact, and of course finding a new job for a disabled employee is one method of accommodating the employee's disability. *EEOC v. Humiston-Keeling, Inc.*, 227 F.3d 1024, 1026 (7th Cir. 2000); see 42 U.S.C. § 12111(9)(B). One of the nursing jobs that does not involve patient contact is that of "utilization nurse," whose responsibility is to "go to inpatient wards, review charts for appropriateness of treatment and then make recommendations to the chief of staff as to whether or not in their opinions these patients were being treated properly. If they were being

kept in the hospital for too long for no reason, if they were given tests that were not really related to their diagnosis, those were the kinds of things that utilization review does." Those tasks the plaintiff had the physical ability to perform, and openings for such jobs were posted and she applied for them but was turned down—but was turned down for reasons unrelated to her physical condition.

She claims that her supervisor testified that there "were administrative nursing positions that Plaintiff was able to perform with her physical limitations." He had said in a letter to her that "your [physical] condition does not eliminate you for administrative Nursing positions, other than patient care areas." He testified in his deposition that what he had meant was "that there were other administrative nursing positions that may have been available or would become available, that she was still eligible to apply for those positions." She does not take issue with this explanation, which makes clear that the supervisor did not testify that she was qualified to be a utilitization nurse or any other kind of nurse that does not do any patient care. She was not *physically* disqualified, but obviously these positions require more than the ability to sit. They require professional skills and experience that she may have lacked.

But assuming that she was qualified for such a job, if nevertheless there were better-qualified applicants—and the evidence is uncontradicted that there were—the VA did not violate its duty of reasonable accommodation by giving the job to them instead of to her. *Id.* at 1026-29; *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995); see also *Williams v. United Insurance Co. of America*, 253 F.3d 280, 282 (7th Cir. 2001). This conclusion is bolstered by a recent decision of the Supreme Court which

holds that an employer is not required to give a disabled employee superseniority to enable him to retain his job when a more senior employee invokes an entitlement to it conferred by the employer's seniority system. *U.S. Airways, Inc. v. Barnett*, 122 S.Ct. 1516, 1519, 1524-25 (2002). If for "more senior" we read "better qualified," for "seniority system" we read "the employer's normal method of filling vacancies," and for "superseniority" we read "a break," *U.S. Airways* becomes our case.

As a matter of fact, the VA *did* accommodate the plaintiff's disability, and the accommodation was reasonable. The clerical position to which it reassigned her gave her the same net after-tax salary as she had earned as a nurse though with fewer fringe benefits and, because it did not draw on her nursing skills, fewer career advantages. It was not a perfect substitute. But an employer is not required to provide the accommodation for a disabled employee that is ideal from the employee's standpoint, only one that is reasonable in terms of costs and benefits. See *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 2002 WL 1811325, at *7-8 (7th Cir. Aug. 8, 2002); *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 577 (7th Cir. 2001); *Vande Zande v. Wisconsin Dept. of Administration*, 44 F.3d 538, 542-43 (7th Cir. 1995); *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259-60 (1st Cir. 2001); *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580-81 (3d Cir. 1998); *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1183 and n. 10 (6th Cir. 1996); *Borkowski v. Valley Central School District*, 63 F.3d 131, 138 (2d Cir. 1995). Neither of the "ideal" accommodations from the plaintiff's standpoint—restoring her to a regular nursing job with patient contact or assigning her an administrative nursing job without patient contact—was reasonable. She was not qualified for the first (and it would not have been a cost-justified accommodation to pair another

employee with her to do the lifting) and not as well qualified as competing applicants for the second.

She has an ancillary beef, that the district judge granted the VA's motion for summary judgment before ruling on her motion to compel discovery. Ordinarily that would indeed be a no-no. *Farmer v. Brennan*, 81 F.3d 1444, 1449-50 (7th Cir. 1996); *Dean v. Barber*, 951 F.2d 1210, 1213-14 (11th Cir. 1992). But not in the peculiar circumstances of this case. The plaintiff's lawyer had served interrogatories on VA personnel seeking information about the existence, requirements, and availability of nursing jobs in the VA that did not involve patient care. It was because the responses were so inadequate, implying as they did that the VA had no information relevant to the inquiry, that the plaintiff's lawyer filed a motion to compel fuller answers. In response the VA offered the lawyer the individuals who had prepared the interrogatory responses, for him to depose. The offer was not particularly generous. The VA employees whom he was being invited to depose were the very ones who had failed to answer his interrogatories. How likely was it that he would extract helpful information from them by questioning them at a deposition? Not very; for he did depose them, and obtained nothing of value. The VA argues in this court that there is nothing more in its files that could help him. He argues that there must be, but that is not an adequate response.

The district judge did not jump the gun and deny summary judgment before the plaintiff's lawyer had an opportunity to depose the VA witnesses or present other evidence obtainable from the VA, in which event the grant of summary judgment would indeed have been premature. There is no indication that any such evidence exists. So what the argument of the plaintiff's lawyer comes down

to is that the judge should have punished the VA's foot-dragging by denying summary judgment. The failure to do this was not an abuse of the judge's discretion. *Weeks v. Samsung Heavy Industries Co.*, 126 F.3d 926, 943 (7th Cir. 1997). Indeed, had the judge done what the plaintiff is asking, the punishment would have been disproportionate to the crime, since the plaintiff has not shown that she was harmed. It's not as if she were seeking reimbursement for the expense of depositions that would have been unnecessary had the VA responded adequately to the interrogatories. She is not.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*