**Romell R. CARTER, Plaintiff–
Appellant,**

v.

**NORTHWEST AIRLINES, INC.,
Defendant–Appellee.**

**No.  03–1647.**

United States Court of Appeals,
Seventh Circuit.

Argued March 3, 2004.

Decided March 23, 2004.

---

Stuart H. Galesburg, Chicago, IL, for Plaintiff–Appellant.

Adrianne C. Mazura, Piper Rudnick, Chicago, IL, for Defendant–Appellee.

Before POSNER, ROVNER, and EVANS, Circuit Judges.

## ORDER

While working for Northwest Airlines as an "equipment services employee," Romell Carter's right foot was crushed between two forklifts. His injury prevented him from returning to his position, and he sued Northwest alleging that it violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, by failing to find him another position that he could perform. The district court granted summary judgment in favor of Northwest. The court held that even though a rational juror could find that Carter was a qualified individual with a disability, Northwest had accommodated Carter's disability by helping him look for other jobs within the corporation. Carter appeals, and we affirm.

In 1995 Carter began working for Northwest as an equipment services employee, a position governed by the collective bargaining agreement between Northwest and the International Association of Machinists and Aerospace Workers. His duties included operating equipment, loading and unloading luggage and cargo onto planes and carts, and cleaning the inside and outside of planes. In July 1999, his right foot was crushed between two forklifts. After undergoing surgery and other medical treatment, he was diagnosed with Reflex Sympathetic Dystrophy, a nervous system disorder that causes constant burning pain and inflammation. Carter experiences pain when standing on his foot, and this becomes intolerable after approximately 10 minutes. He can climb stairs slowly and lift ten pounds or so. Using a cane and special orthotic shoes, he is able to walk for approximately 15 minutes, and he has learned to drive using his left foot.

In March 2000 Carter's doctor assessed his ability to return to work and advised that he could occasionally lift up to 20 pounds, push, pull, reach and bend, and that he could use "negligible force" to move objects. In June 2000 Margaret Sommers, an "Accommodations Assessment Advisor" for Northwest, invited Carter to meet with her to consider whether he could continue working as an equipment services employee with or without accommodations. Although Carter knew about the meeting, he did not attend. In his absence Sommers and Carter's supervisor determined that, given Carter's medical restrictions, there were no accommodations that would allow him to return to the equipment services position.

Sommers then began working with Carter to find other job opportunities at Northwest through its "Alternate Duty Exploration" process, during which Sommers helped Carter identify potential positions of interest and sent him postings for every open position. Carter concluded that he would be able to work as a reservation sales agent, and using bid forms sent to him by Sommers he bid on an open sales agent position in Florida. Shortly thereafter Sommers closed Carter's file and instructed him to continue looking for jobs using the company's computer system and its job hotline. Although Carter was later awarded the sales agent position, he failed the required keyboarding test. Carter then requested a keyboarding class so that he could qualify for the sales agent position. Northwest complied, but even though Carter took and passed the class, he did not retake the keyboarding test despite Northwest's offer to allow him to do so.

Carter then sued Northwest alleging that it had violated the ADA by failing to reasonably accommodate his disability. Specifically, he claimed that if Northwest had engaged in the interactive process envisioned under the ADA, he could have located a vacant position at Northwest that he could have performed with or without an accommodation. The district court granted summary judgment in Northwest's favor, determining that even though Carter had created a material issue of fact over whether he was disabled under the ADA, Northwest had made reasonable efforts to accommodate Carter.

We review a grant of summary judgment de novo. *Dyrek v. Garvey*, 334 F.3d 590, 597–98 (7th Cir.2003). We construe all facts in the light most favorable to Carter and draw all reasonable and justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). To withstand summary judgment, however, Carter still must provide evidence demonstrating a genuine issue of material fact for trial. *Dyrek*, 334 F.3d at 597–98.

The ADA prohibits covered private employers from discriminating against qualified individuals with a disability. *See* 42 U.S.C. § 12112(a); *Sutton v. United Air Lines Inc.*, 527 U.S. 471, 477–78, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Discrimination may include failing to reasonably accommodate "the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer "can demonstrate that the accommodation would impose an undue hardship" on its business operations. 42 U.S.C. § 12112(b)(5)(A). Thus, to withstand summary judgment, Carter needed to demonstrate (1) that he had a disability, (2) that Northwest knew about the disability, and (3) that he was otherwise qualified for the position in question and Northwest refused to make a reasonable accommodation. *See, e.g., Rauen v. United States Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895–96 (7th Cir.2003).

On appeal Carter argues that Northwest failed to reasonably accommodate his known disability. Pointing to supposed shortcomings in Northwest's Alternate Duty Exploration process—that, for example, Sommers did not discuss a job's qualifications unless Carter first expressed interest in it and that she sent him job postings with abbreviated titles without accompanying job descriptions—Carter contends that Northwest failed to engage in the "interactive process" the ADA requires, *see, e.g., Emerson v. N. States Power Co.*, 256 F.3d 506, 515 (7th Cir. 2001); 29 C.F.R. § 1630.2(o)(3), to determine whether a reasonable accommodation exists. Northwest's failure, argues Carter, required it to show that no reasonable

accommodations were available, a burden Carter claims Northwest cannot meet because there were numerous vacant positions to which it could have reassigned him.

■ The "interactive process" envisioned by the ADA requires the employer and employee to jointly investigate whether the employee's disability can be accommodated. *See Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 700 (7th Cir.1998). But an employer's failure to engage in the process does not itself give rise to relief. *See, e.g., Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir.2001). The ultimate burden remains on the employee to prove that a reasonable accommodation existed. *See Mays v. Principi*, 301 F.3d 866, 870–71 (7th Cir.2002).

■ Carter failed to carry his burden. First, during the Alternate Duty Exploration process with Sommers, Carter focused exclusively on the reservation sales agent position, but he was unable to pass the keyboarding test (and chose not to retake it after completing a keyboarding course provided through Northwest's insurance), and does not now suggest any accommodation that might qualify him for the position. *See Emerson*, 256 F.3d at 513 (employee not qualified for desired position when she could not fill legitimate job expectation of fielding incoming emergency calls). Instead, he now identifies several jobs that were available between July and December 2001, such as cleaner and quality service assistant, "for which he *may have* been qualified with or without reasonable accommodations." Instead of explaining how he "may have been" qualified for the positions, he details accommodations that Northwest has provided for *other* employees and ignores his burden of showing that *he* could perform the jobs with or without an accommodation. *See Mays*, 301 F.3d at 871; *see also Webster v.*

*Methodist Occupational Health Ctrs.*, 141 F.3d 1236, 1238 (1998) (employee cannot suggest different desired job after interactive process has ended). Thus, regardless of whether Northwest engaged in the "interactive process," Carter has failed to carry his ultimate burden of demonstrating that a reasonable accommodation existed.

Moreover, the evidence here demonstrates that Northwest did meet its obligation to consult with Carter about other possible jobs and accommodations. Sommers attempted several times to meet with Carter and determine if any accommodations existed that would allow him to return to his position as an equipment services operator. Sommers did not hear from Carter after unsuccessfully trying to reach him by phone and informing him in writing of the date and time of the meeting, so she ultimately conducted the assessment without him and concluded that no accommodation would permit him to return to his position—a conclusion supported by Carter's deposition testimony to the effect that his foot condition prevented him from doing almost everything his job required. Later Sommers worked with Carter for three months by assessing his skills and abilities, notifying him of open positions, and informing him in greater detail about those jobs in which he expressed interest. Contrary to Carter's assertion, Northwest's actions went far beyond those of the employer in *Gile v. United Airlines, Inc.*, 213 F.3d 365 (7th Cir.2000), who made no effort to accommodate the plaintiff's specific request for a transfer to an open day shift, telling her instead that maybe she should "just resign and stay home," *id.* at 373. Here, Northwest attempted to involve Carter in the process of determining if his condition would permit him to return to his original position with or without an accommodation, and it then helped him locate and bid

for open positions for which he might qualify. This demonstrates that Northwest engaged in the interactive process in good faith. *See Emerson,* 256 F.3d at 515.

Because no rational factfinder could conclude that Northwest failed to reasonably accommodate Carter's disability, we need not reach Northwest's argument that we affirm on the alternate basis that Carter's foot condition does not amount to a disability as defined by the ADA.

We thus AFFIRM the judgment of the district court.