# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2238

_____

| | | |
|---|---|---|
| Pam Huber, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Wal-Mart Stores, Inc., | * | Western District of Arkansas. |
| | * | |
| Appellant. | * | |
| | * | |
| _____ | * | |
| | * | |
| Equal Employment Advisory Council; | * | |
| National Chamber Litigation Center, | * | |
| | * | |
| Amici on behalf of | * | |
| Appellant. | * | |

_____

Submitted: December 12, 2006
Filed: May 30, 2007

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

We are faced with an unanswered question: whether an employer who has an established policy to fill vacant job positions with the most qualified applicant is required to reassign a qualified disabled employee to a vacant position, although the

disabled employee is not the most qualified applicant for the position. Pam Huber (Huber) brought an action against Wal-Mart Stores, Inc. (Wal-Mart), claiming discrimination under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 to 12213, and the Arkansas Civil Rights Act of 1993 (ACRA), Ark. Code Ann. §§ 16-123-101 to 16-123-108. The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of Huber. Wal-Mart appeals. For the reasons stated below, we reverse.

## I.    BACKGROUND

Huber worked for Wal-Mart as a dry grocery order filler earning $13.00 per hour, including a $0.50 shift differential. While working for Wal-Mart, Huber sustained a permanent injury to her right arm and hand. As a result, she could no longer perform the essential functions of the order filler job. The parties stipulated Huber's injury is a disability under the ADA.

Because of her disability, Huber sought, as a reasonable accommodation, reassignment to a router position, which the parties stipulated was a vacant and equivalent position under the ADA. Wal-Mart, however, did not agree to reassign Huber automatically to the router position. Instead, pursuant to its policy of hiring the most qualified applicant for the position, Wal-Mart required Huber to apply and compete for the router position with other applicants. Ultimately, Wal-Mart filled the job with a non-disabled applicant and denied Huber the router position. Wal-Mart indicated, although Huber was qualified with or without an accommodation to perform the duties of the router position, she was not the most qualified candidate. The parties stipulated the individual hired for the router position was the most qualified candidate.

Wal-Mart later placed Huber at another facility in a maintenance associate position (janitorial position), which paid $6.20 per hour. Huber continues to work in that position and now earns $7.97 per hour.

-2-

Huber filed suit under the ADA, arguing she should have been reassigned to the router position as a reasonable accommodation for her disability. Wal-Mart filed a motion for summary judgment, contending it had a legitimate non-discriminatory policy of hiring the most qualified applicant for all job vacancies and was not required to reassign Huber to the router position. Huber filed a cross-motion for summary judgment, and the district court granted Huber's motion. Wal-Mart appeals.

## II.    DISCUSSION

We review de novo the district court's grant of summary judgment. Fenney v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003). Summary judgment is appropriate when the evidence and reasonable inferences, viewed in the light most favorable to the non-moving party, show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.

To make a prima facie case in a reasonable accommodation claim under the ADA,[1] the plaintiff must show she (1) has a disability within the meaning of the ADA, (2) is a qualified individual, and (3) suffered an adverse employment action as a result of the disability. Id. To be a qualified individual within the meaning of the ADA, an employee must (1) possess the requisite skill, education, experience, and training for her position; and (2) be able to perform the essential job functions, with or without a reasonable accommodation. Id. at 712.

Here, the parties do not dispute Huber (1) has a disability under the ADA, (2) suffered an adverse employment action, or (3) possessed the requisite skills for the router position. The parties' only dispute is whether the ADA requires an employer, as a reasonable accommodation, to give a current disabled employee preference in

---

[1]"[W]e analyze a disability claim presented under the ACRA using the same principles employed in analyzing claims under the [ADA]." Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 490 (8th Cir. 2002).

filling a vacant position when the employee is able to perform the job duties, but is not the most qualified candidate.

The ADA states the scope of reasonable accommodation may include:

> [J]ob restructuring, part-time or modified work schedules, *reassignment to a vacant position,* acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B) (emphasis added).

Huber contends Wal-Mart, as a reasonable accommodation, should have automatically reassigned her to the vacant router position without requiring her to compete with other applicants for that position. Wal-Mart disagrees, citing its non-discriminatory policy to hire the most qualified applicant. Wal-Mart argues that, under the ADA, Huber was not entitled to be reassigned automatically to the router position without first competing with other applicants. This is a question of first impression in our circuit. As the district court noted, other circuits differ with respect to the meaning of the reassignment language under the ADA.

The Tenth Circuit in <u>Smith v. Midland Brake, Inc.</u>, 180 F.3d 1154, 1164-65 (10th Cir. 1999) (en banc), stated:

> [I]f the reassignment language merely requires employers to consider on an equal basis with all other applicants an otherwise qualified existing employee with a disability for reassignment to a vacant position, that language would add nothing to the obligation not to discriminate, and would thereby be redundant. . . .

Thus, the reassignment obligation must mean something more than merely allowing a disabled person to compete equally with the rest of the world for a vacant position.

In the Tenth Circuit, reassignment under the ADA results in automatically awarding a position to a qualified disabled employee regardless whether other better qualified applicants are available, and despite an employer's policy to hire the best applicant.[2]

On the other hand, the Seventh Circuit in EEOC v. Humiston-Keeling, Inc., 227 F.3d 1024, 1027-28 (7th Cir. 2000), explained:

> The reassignment provision makes clear that the employer must also consider the feasibility of assigning the worker to a different job in which his disability will not be an impediment to full performance, and if the reassignment is feasible and does not require the employer to turn away a superior applicant, the reassignment is mandatory.

In the Seventh Circuit, ADA reassignment does not require an employer to reassign a qualified disabled employee to a job for which there is a more qualified applicant, if the employer has a policy to hire the most qualified applicant.

Wal-Mart urges this court to adopt the Seventh Circuit's approach and to conclude (1) Huber was not entitled, as a reasonable accommodation, to be reassigned automatically to the router position, and (2) the ADA only requires Wal-Mart to allow Huber to compete for the job, but does not require Wal-Mart to turn away a superior

---

[2]Contrary to Huber's assertion, Aka v. Washington Hospital Center, 156 F.3d 1284 (D.C. Cir. 1998), does not hold the ADA requires an employer to place a disabled employee in a position while passing over more qualified applicants. Rather, Aka only rejects an "interpretation of the reassignment provision as mandating nothing more than that the employer allow the disabled employee to submit his application along with all of the other candidates." Id. at 1305.

applicant. We find this approach persuasive and in accordance with the purposes of the ADA. As the Seventh Circuit noted in Humiston-Keeling:

> The contrary rule would convert a nondiscrimination statute into a mandatory preference statute, a result which would be both inconsistent with the nondiscriminatory aims of the ADA and an unreasonable imposition on the employers and coworkers of disabled employees. A policy of giving the job to the best applicant is legitimate and nondiscriminatory. Decisions on the merits are not discriminatory.

Id. at 1028 (internal quotation omitted). "[T]he [ADA] is not a mandatory preference act." Id.

We agree and conclude the ADA is not an affirmative action statute[3] and does not require an employer to reassign a qualified disabled employee to a vacant position when such a reassignment would violate a legitimate nondiscriminatory policy of the employer to hire the most qualified candidate. This conclusion is bolstered by the Supreme Court's decision in U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 406 (2002), holding that an employer ordinarily is not required to give a disabled employee a higher seniority status to enable the disabled employee to retain his or her job when another qualified employee invokes an entitlement to that position conferred by the employer's seniority system. We previously have stated in dicta that "an employer is not required to make accommodations that would subvert other, more qualified applicants for the job." Kellogg v. Union Pac. R.R. Co., 233 F.3d 1083, 1089 (8th Cir. 2000) (per curiam).

---

[3]See Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1094 (5th Cir. 1996) ("The [ADA] does not require affirmative action in favor of individuals with disabilities. It merely prohibits employment discrimination against qualified individuals with disabilities, no more and no less.").

Thus, the ADA does not require Wal-Mart to turn away a superior applicant for the router position in order to give the position to Huber. To conclude otherwise is "affirmative action with a vengeance. That is giving a job to someone solely on the basis of his status as a member of a statutorily protected group." Humiston-Keeling, 227 F.3d at 1029.

Here, Wal-Mart did not violate its duty, under the ADA, to provide a reasonable accommodation to Huber. Wal-Mart reasonably accommodated Huber's disability by placing Huber in a maintenance associate position. The maintenance position may not have been a perfect substitute job, or the employee's most preferred alternative job, but an employer is not required to provide a disabled employee with an accommodation that is ideal from the employee's perspective, only an accommodation that is reasonable. See Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1019 (8th Cir. 2000). In assigning the vacant router position to the most qualified applicant, Wal-Mart did not discriminate against Huber. On the contrary, Huber was treated exactly as all other candidates were treated for the Wal-Mart job opening, no worse and no better.

## III. CONCLUSION

We reverse the judgment of the district court, and we remand for entry of judgment in favor of Wal-Mart consistent with this opinion.

_____