In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3973

BEVERLY J. RAUEN,

*Plaintiff-Appellant*,

*v.*

UNITED STATES TOBACCO MANUFACTURING
LIMITED PARTNERSHIP,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 6972—**Milton I. Shadur**, *Judge.*

ARGUED NOVEMBER 4, 2002—DECIDED FEBRUARY 10, 2003

Before BAUER, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* This case involves Beverly Rauen's claim under the Americans with Disabilities Act ("ADA") that her employer, United States Tobacco ("UST"), discriminated against her by failing to provide a reasonable accommodation for her disability. The district court granted UST's summary judgment motion, holding that Rauen was not entitled to an accommodation because, although she was disabled, she could perform the essential functions of her job without any accommodation. For the reasons set forth in the following opinion, we affirm the district court's decision.

## I. History

### A. Rauen's Work at UST

Rauen began working as a secretary for UST, a smoke-less tobacco manufacturer, immediately after graduating high school in 1968. While working for UST, she was able to obtain a college degree in 1977 through UST's tuition reimbursement program. She received various promotions, including one in 1987 when UST made her a software engineer in its Nashville, Tennessee facility. After four years of work in Nashville, Rauen moved to the company's plant in Franklin Park, Illinois. She remained in Franklin Park as a software engineer from approximately 1991 until the present litigation.

According to UST's Software Engineer Position Profile, Rauen is expected to spend 60% of her time managing capital projects at the Franklin Park facility; 20% of her time serving as a liaison between UST's Nashville and Franklin Park facilities; and the remaining 20% ensuring that various systems and programs are performing as designed. Both parties agree that Rauen's primary duties involve monitoring contractors' work at the Franklin Park facility, answering contractors' questions as they arise, and ensuring that the contractors' work does not interfere with the manufacturing process.

### B. Rauen's Health Problems

In April 1996, Rauen was diagnosed with rectal cancer. She had to have several surgeries and undergo radiation and chemotherapy treatments. Unable to work as a result of these treatments, Rauen went on short-term disability leave from April to October 1996, and then on long-term leave from October to December 1996. UST held her job open during this leave. Rauen returned to work in January 1997 and was able to work without further leaves of

absence or accommodations throughout that year. Unfortunately, in January 1998, Rauen was diagnosed with breast cancer and had to undergo various treatments that again left her unable to work. UST again accommodated Rauen's condition by granting her short-term disability leave from January to July 1998 and long-term disability leave from August 1998 to January 1999. She returned to work on January 13, 1999, and was able to work full time, without further leave, from January 1999 through October 2001.

According to Rauen, her sickness and treatments have taken their toll, making it more difficult for her to perform various daily activities. For instance, because she is without a portion of her small intestine and must take in two liters of IV fluids daily, she has to use the bathroom up to fourteen times a day. The fluid intake and rapid flow through her system requires her to wear an ostomy appliance that must be emptied frequently. Because of her small size, the appliance does not fit her properly and often leaks, causing skin rashes. Her condition also produces overwhelming fatigue, forcing her to lie down and rest often. Getting to work can be difficult because she sometimes must stop and use the restroom on the way, and the fatigue she experiences increases her chances of falling asleep behind the wheel.

## C.  Rauen's Accommodation Request

Because of these complications, upon returning to work in January 1999, Rauen presented UST with a letter from her doctor stating that it would be beneficial for her to work from a home office. In response to this letter, UST requested that Rauen sign a release form permitting its independent contractor health and disability consultant, Dr. Cassidy, to obtain Rauen's medical information in order to review her accommodation request. Rauen, however, re-

fused to sign the release. Her refusal, she informs us, stemmed from concern over the fact that Dr. Cassidy, in addition to being a medical doctor, also held a law degree, and she did not feel comfortable giving her medical records to a lawyer who worked for UST. Thus, no further action was taken by either party pursuant to this initial accommodation request, and Rauen continued to work full time at the office.

In May 1999, she presented UST with another letter, renewing her request to work at home. Although she had still not signed the medical release, UST agreed to meet with her on May 6, 1999, to discuss possible accommodations. Rauen made detailed notes of this meeting. Both parties agree that her notes accurately reflect the events that transpired. The relevant portions of those notes are reproduced below:

> 11. They asked how this home office would work. How many days would I be at home. I said I would be at the plant as needed—that my job was not routine, it was project oriented, so that, as projects required it, I would be here 7 days a week, that, in the past, I have worked 20-hour days . . . . But if there were no reason to be here, then I would be home. They said they felt that some structure was needed, maybe coming to work 1 day each week. I said I could see no reason to do that for the sake of doing that. They said they felt that things going on in the Plant would affect my projects and that I needed to be here to know what's going on. I said I could do that by phone and, when I felt it was necessary, I would go to the Plant. So they said you want a home office in its entirety, that a partial home office was not acceptable. I said yes . . . .

> 12. They asked who would determine when I came to work. I said if John wanted me for a meeting or other reason, I would be here. If I had meetings I would be

here. John said, "but you would determine when you would be here, right. Right now, I don't know what time you get to work or what time you leave work, do I." I said no, that's right; for the most part, I would determine when I would be here.

17.   They asked me if there was any accommodation they could make at work for me. I said No. They said we could provide you with private facilities. I said that would not help. They said we could give you a place to rest during the day. I said if I want to rest I can lay down on the floor in my office. They asked what it was that made it difficult for me to come to work everyday. I said that if I could stay home, there are things that I would not have to do everyday that I have to do now, that I get very tired, and that I have Leukopenia.

(Def.'s Statement of Material Facts, Doc. 42, Exhibit V, ¶¶ 11, 12, 17.)

It is apparent from these notes that the accommodation Rauen sought was a home office "in its entirety." According to her, she would accept nothing less than being allowed to work from home when she thought she was not needed at the office.

After the meeting, no further discussions about her accommodation request took place for over a year. UST did not inquire further about Rauen's ability to do the essential functions of her job at home, and it did not formally refuse her request to do so. Rauen did not seek further discussions, nor did she sign the medical release form that would have allowed UST's health and disability consultant to review her request.

In August 1999, four months after the meeting, Rauen filed a charge of disability discrimination with the EEOC. She did not inform UST that she was filing the charge, nor did she modify her initial request for a home office.

Rather, she immediately sought a right-to-sue letter, and, on October 25, 1999, she filed this action alleging, among other things, that UST violated the ADA by not granting her a home office accommodation.

The next communication between Rauen and UST about an accommodation occurred in September 2000, when she sent UST another letter from her doctor asserting that it would benefit her to work at home. The parties never met concerning this request, each blaming the other for the failure to get together.[1]

The district court granted UST's motion for summary judgment on the ADA claim in October 2001, basing its decision on the fact that Rauen could and did perform all essential aspects of her job without accommodation. Rauen worked full-time at the office throughout the entire period from January 1999, when she returned to work following her second leave of absence, to October 2001, when the district court ruled against her. In fact, Rauen maintains, and UST agrees, that despite not receiving the requested home office accommodation, she continued to perform the essential functions of her job as a Software Engineer exceedingly well. Moreover, both parties agree that she was actually performing duties "above and beyond that of a software engineer," in that she was also doing many duties of a project engineer. (Rauen Br. at 7.)

The district court held that since Rauen could perform the essential aspects of her job without accommodation

---

[1] The district court noted, and we agree, that it is apparent that neither UST nor Rauen engaged in the interactive process in good faith. But we, like the district court, do not base our decision on a breakdown in the interactive process.

that she was not entitled to any accommodation.[2] Rauen now appeals that decision. We affirm the district court's decision, but we reach our conclusion through different analysis.

## II. Analysis

### A. Standard of Review

We review the grant of a motion for summary judgment *de novo*, construing the evidence in the light most favorable to the nonmoving party. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986). Moreover, we may affirm a grant of summary judgment "on a ground other than that relied upon by the district court below, so long as the alternative basis finds adequate support in the record." *EEOC v. North Knox Sch. Corp.*, 154 F.3d 744, 746 (7th Cir. 1998) (quotation omitted).

### B. The ADA Claim

The basic rule of the ADA is that an employer "shall [not] discriminate against a qualified individual with a

---

[2] It bears noting that the district court, contrary to what the EEOC's amicus brief suggests, actually did not put forth a hard-and-fast rule, rather it stated that "[t]here may perhaps be situations in which an employee, although capable of performing the essential functions of her job, may be entitled to some form of accommodation because it is wholly unreasonable to require her to perform her work without accommodation. But Rauen's counsel has not made that argument." (R. Doc. 55, p. 13.)

disability because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). The ADA provides that the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . . ." 42 U.S.C. § 12112(b)(5)(A). Therefore, to prevail on her ADA claim Rauen must show that she has a disability, that she is "otherwise qualified" for the job, and that her employer refused to make a "reasonable accommodation" for her disability.

In this appeal, the parties do not dispute that Rauen has a disability within the ADA's definition or that she is "otherwise qualified." The issue before us is whether UST has discriminated against Rauen by failing to make a "reasonable accommodation." As noted above, the district court found that Rauen was not entitled to any accommodation because she could perform all essential elements of her job without accommodation. In reaching this decision, the district court relied heavily on an unpublished opinion from the United States Court of Appeals for the Sixth Circuit, which held that a plaintiff who, though disabled, can perform all essential functions of the job without accommodation, cannot prove the reasonableness of any requested accommodation. *Black v. Wayne Ctr.*, No. 99-1225, 2000 U.S. App. LEXIS 17567, at *9-*10 (6th Cir. July 6, 2000) (per curiam). The parties, thus, argue vigorously on appeal over whether any accommodation would be reasonable for Rauen, given her ability to perform without one. We need not decide this broad issue, however, because even assuming that some accommodations would be reasonable for a person, like Rauen, who can perform all essential functions of a job without any accommodation, the specific accommodation that Rauen has requested in this case is not reasonable.

Rauen requested a home office as an accommodation for her disability. Specifically, she asked that she be allowed to work at home when she was not needed at the office, and that generally, she would determine when it was necessary for her to come to work. Indeed, she plainly rejected all other possible accommodations suggested by UST, including their suggestion that she come to the office only once a week. She made clear that any sort of "partial home office" was out of the question, and that the only acceptable option to her was "a home office in its entirety." Rauen points to nowhere in the record where she backed away from this position or ever requested anything other than a home office on her terms. Thus, we must decide whether this sort of home office would have been a reasonable accommodation for Rauen.

We have stated that the issue of "[w]hether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002). In conducting this balance, we first note, as we held in *Vande Zande v. Wis. Dep't of Admin.*, that a home office is rarely a reasonable accommodation. 44 F.3d 538, 544-45 (7th Cir. 1995). In *Vande Zande*, the plaintiff, who was a secretary or administrative assistant, sought an accommodation to work at home for a period of eight weeks. We held that this accommodation was not reasonable, stating:

> Generally . . . an employer is not required to accommodate a disability by allowing the disabled worker to work, by himself, without supervision, at home. . . . No doubt to this as to any generalization about so complex and varied an activity as employment there are exceptions, but it would take a very extraordinary case for the employee to be able to create a triable issue of the employer's failure to allow the employee to work at home.

*Id.* at 544-45.

The reason working at home is rarely a reasonable accommodation is because most jobs require the kind of teamwork, personal interaction, and supervision that simply cannot be had in a home office situation. *Id.* at 544 ("Most jobs in organizations public or private involve team work under supervision rather than solitary unsupervised work, and team work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance."); *see also EEOC v. Yellow Freight System, Inc.*, 253 F.3d 943, 948-49 (7th Cir. 2001) ("Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise.") (quotations omitted).

Rauen's situation does not present the type of "very extraordinary case" where a home office would be reasonable. The central components of Rauen's job require her to be at the office. Even she admits that her primary job responsibilities involve monitoring contractors' work, answering contractors' questions as they arise, and ensuring that the contractors' work does not interfere with the manufacturing process. It is difficult to understand how these sorts of tasks could be performed from home. Rauen asserts that she would be at work when it is was necessary, but she also made clear that she would determine when it was necessary for her to be there. Further, in the type of project and production work that Rauen's job involves, problems requiring immediate resolution would undoubtedly arise on the spur of the moment. Every description of Rauen's duties that either party has presented in the record shows that hers is the kind of job that requires teamwork, interaction, and coordination of the type that requires being in the work place. Thus, her situation does not present the exceptional case where a work-at-home accommodation would be reasonable.

Tipping the scales even further against the reasonableness of Rauen's home office accommodation request is the fact that Rauen can perform all essential elements of her job without any accommodation. As noted above, we do not answer the question today of whether any accommodation could ever be reasonable for an employee who can perform all essential job functions without accommodation. But Rauen's ability to perform the essential functions of the job without accommodation surely weighs against the reasonableness of an accommodation. In other words, while it might not be impossible for a person that can perform all essential functions to show that an accommodation is reasonable, it is surely more difficult. Therefore, given that Rauen can perform the essential functions of her job without accommodation and given that she seeks a home office, which we have held is almost never reasonable, we find that the scales of the reasonable accommodation balance weigh against Rauen.

### III. Conclusion

We reject Rauen's claim that UST has violated the ADA by denying her a reasonable accommodation. The district court's grant of UST's motion for summary judgment is therefore AFFIRMED for the reasons set forth above.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*