NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0608n.06
Filed: August 22, 2006

No. 05-5811

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHARLES M. ADAMS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT COURT |
| | ) | FOR THE WESTERN DISTRICT OF |
| JOHN E. POTTER, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |

Before: BOGGS, Chief Circuit Judge; GIBBONS and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Charles M. Adams ("Adams") sued the Postmaster General, John E. Potter ("Potter"), in the United States District Court for the Western District of Kentucky. Adams claimed that the United States Postal Service ("USPS") discriminated against him on the basis of a disability when it terminated his employment as a mail handler. The district court granted summary judgment against Adams, finding that he had not made out a prima facie case of disability discrimination. Adams appealed the grant of summary judgment. For the following reasons, we affirm.

I.

Adams, who was a staff sergeant in the United States Marine Corps ("Marines"), sustained a spinal injury in a 1992 motor vehicle accident. The injury caused spondylolisthesis and

radiculopathy. He underwent back surgery in November 1992 to remove a disc and fuse his vertebrae together. After the surgery, the Marines concluded that Adams was twenty-percent disabled by his spinal injury and medically discharged him in 1993.

Adams entered civilian employment after his discharge from the Marines. After a brief stint as a corrections officer, Adams became a mail handler for the USPS on January 6, 1996. Mail handlers load and unload containers of mail, which requires them to stand, walk, bend, twist, push, and pull, as well as lift and carry as much as seventy pounds. Adams's job on the loading dock required him to move mail from trucks to all-purpose containers, which can weigh up to 1500 pounds, and move the containers around the mail processing facility.

While working, Adams reinjured his back on August 27, 1996. The reinjury caused Adams pain, but he continued to work and sought no medical treatment for sixteen months. Finally, on December 7, 1997, Adams consulted his doctor. The doctor placed Adams on indefinite medical leave from the USPS, effective December 7, 1997, and determined that Adams's previous surgery had failed because the hardware stabilizing his spine had broken. In March 1998, Adams underwent two back surgeries to replace the damaged hardware and re-fuse his spine.

Adams remained on medical leave while recuperating from his surgeries. His doctor, Dr. Rolando Puno, cleared Adams to return to work in October 1998 but only with restrictions. Dr. Puno restricted Adams to twenty-to-thirty minutes per day of standing, walking, climbing, or driving; occasional stooping, bending, and twisting; no lifting of any object weighing more than thirty-nine pounds; and no more than four hours per day of work. Adams, seeking to return to work with these restrictions, requested light duty from the USPS and filed for worker's compensation

under the Federal Employees' Compensation Act. The USPS ordered an examination of Adams by its physician, who concluded that Adams could return to work under Dr. Puno's restrictions. Nevertheless, Adams did not return to work because the USPS had not granted his request for light duty, and he did not think he was capable of working as a mail handler.

On March 22, 1999, the Department of Labor denied Adams's request for worker's compensation because the medical evidence was insufficient to establish that his back injury was work-related. The Labor Department's conclusion that Adams's injury was not work-related made Adams ineligible for permanent reassignment to light duty or another position under the collective bargaining agreement ("CBA") between the USPS and the National Postal Mail Handlers Union. Under that agreement, only mail handlers with work-related injuries or with five years' employment with the USPS are eligible for reassignment. In addition to resulting in a denial of Adams's request for light duty, the Labor Department's conclusion caused the USPS to order Adams to undergo a fitness-for-duty evaluation.

The fitness-for-duty evaluation, which was completed on August 12, 1999, determined that Adams was not capable of performing the essential functions of his mail handler position and concluded that reasonable accommodations would not enable him to perform the job safely. The USPS was advised to determine if other jobs were available for Adams that could accommodate his medical restrictions.

The medical restrictions initially imposed by Dr. Puno remained in place, but Dr. Puno loosened them to permit Adams to work an eight-hour day. Dr. Puno indicated in August 1999 that the restrictions were probably permanent. In February 2000, Dr. Puno wrote Adams a letter

explaining the parameters of the restrictions. Dr. Puno wrote: "It is my opinion that the patient does not have any restrictions so far as activities concerning driving a car, sexual relations, or ordinary activities of daily living. However, the patient should avoid playing contact sports or do[ing] any yard work that would include repetitive bending and heavy lifting greater than [fifty] pounds."

The USPS concluded that it could not assign Adams any duties that would meet these restrictions. Adams had asked the USPS to accommodate his restrictions by permitting him to work seated for half the workday and provide assistance to him when the mail handler position required him to lift seventy pounds. Alternatively, Adams had requested reassignment to a light-duty position or transfer to a mark-up clerk position, which he believed he could perform even though mark-up clerks were occasionally required to engage in heavy lifting. At an accommodation meeting, the USPS determined that accommodating Adams's restrictions, while permitting him to continue working as a mail handler, would eliminate essential functions of the mail handler position. Additionally, the USPS concluded that no positions were available to Adams under the collective bargaining agreement that would permit Adams to work with his restrictions. Finding that it could make no reasonable accommodation for Adams's back injury, the USPS terminated Adams's employment on June 26, 2000.

Adams appealed his termination to the Merit System Protection Board ("MSPB") and claimed that the USPS had placed him on enforced leave and discriminated against him on the basis of a disability. Administrative Law Judge ("ALJ") Stephen E. Manrose affirmed Adams's removal from the USPS and dismissed Adams's enforced leave claim on jurisdictional grounds. Adams petitioned for review, and the MSPB denied his petition, which rendered the ALJ's decision final.

Adams then sought review of the MSPB's decision by the Equal Employment Opportunity Commission ("EEOC"). The EEOC concurred with the MSPB's decision that Adams had not been a victim of disability discrimination, concluding that Adams was not a "qualified disabled individual" under the applicable law, the Rehabilitation Act of 1973.

Having exhausted his administrative remedies, Adams filed suit against the Postmaster General in the Western District of Kentucky. The USPS moved for summary judgment on the ground that Adams was not disabled. The district court, Judge Edward H. Johnstone, denied the motion because there was a genuine issue of material fact about whether Adams's back injury substantially limited his major life activities. Thereafter, Adams's case was transferred to United States District Judge Jennifer B. Coffman. After taking discovery, the USPS again moved for summary judgment.[1] The district court granted the motion for summary judgment, finding that Adams had not put forth a prima facie case of disability discrimination. Adams appealed.

II.

This court reviews the grant of summary judgment *de novo,* reapplying the standard used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that

---

[1] "As a procedural matter, parties are not limited to one summary judgment motion because '[d]istrict courts may in their discretion permit renewed or successive motions for summary judgment, particularly when the moving party has expanded the factual record on which summary judgment is sought.'" *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006) (quoting *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000)). Denials of summary judgment have no preclusive effect. *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995), *cited with approval in Lexicon*, 436 F.3d at 670 n.6.

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold*, 369 U.S. 654, 655 (1962). Summary judgment must be entered against the opposing party, however, if it "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If "a reasonable jury could return a verdict for the nonmoving party[,]" summary judgment should be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

Adams alleged that the USPS discriminated against him on the basis of his back injury "in violation of the laws and regulations of the United States Postal Services [sic] and of the Constitution of the United States, including but not limited to [his] right to be reasonably accommodated when he attempted to return to work." This broad allegation apparently was Adams's attempt to invoke the protections of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, which provides postal workers with their exclusive remedy for disability-based discrimination. *Id.* § 794(a) (prohibiting disability discrimination by "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the United States Postal Service"); *see also Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004) ("[T]he Rehabilitation Act . . . provides the remedy for federal employees alleging disability discrimination."); *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004) ("The Rehabilitation Act prohibits the United States Postal Service from discriminating against their employees on the basis

of a disability.").

The Rehabilitation Act complements the Americans with Disabilities Act ("ADA"). *Compare* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.") *and* 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, . . . be subjected to discrimination . . . by the United States Postal Service"). Accordingly, analyses of claims made under the two acts run roughly parallel. *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459-60 (6th Cir. 1997); *see also* 29 U.S.C. § 794(d) ("The standards used to determine whether [the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act of 1990 . . . .") "To make out a *prima facie* employment discrimination case under either Act, a plaintiff must show (1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability." *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).

Adams's disability discrimination claim must fail because he has not demonstrated that he is a qualified individual with a disability who could perform the essential functions of his postal service job with or without reasonable accommodation.

Adams has not established that he is disabled within the meaning of the Rehabilitation Act. *See* 45 C.F.R. § 84.3(j)(1) (defining disability as "a physical impairment which substantially limits

one or more . . . major life activities); *id.* § 84.3(j)(2)(ii) (defining major life activities to include "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"). Certainly, his back injury constitutes a physical impairment, but whether it substantially limits his major life activities is debatable. He is limited in lifting objects heavier than fifty pounds, prolonged standing, and repetitive bending, twisting, and stooping. He can, however, care for his personal hygiene, fish, drive, work as a paralegal, play non-contact sports, and engage in "ordinary activities of daily living," including sexual relations. The number of activities in which Adams can engage without limitation weakens his argument that he is disabled. The evidence, when viewed in the light most favorable to Adams, suggests that his back problems place some restrictions on his activities but not considerable limitations on his major life activities. Therefore, to classify Adams as disabled because he cannot lift heavy objects or stand for long periods of time or engage in repetitive bending, twisting, or stooping motions would require a broad definition of disability — a definition that would cover almost everyone who suffers from back problems. Such a definition is too broad and has been rejected by at least one of our sister circuits. *See Mays v. Principi*, 301 F.3d 866, 869 (7th Cir. 2002) ("The number of Americans restricted by back problems to light work is legion. They are not disabled.").

At this time, however, we need not resolve the appropriate contours of the disability definition when applied to those with back injuries. Moreover, we need not decide whether Adams's specific restrictions constitute substantial limitations on his major life activities. Our decision on this point is unnecessary because, even if Adams is disabled within the meaning of the Rehabilitation Act, he has not made out a prima facie case of disability discrimination.

*Adams v. Potter*, 05-5811

Adams has failed to demonstrate that he is a *qualified* individual with a disability. 42 U.S.C. § 12111(8). To be a qualified individual with a disability, Adams would have to be able to perform the essential functions of his postal service job with or without reasonable accommodation. *Id.* Adams does not dispute that he cannot perform the essential functions of the mail handler position without accommodation. Rather, he proposed accommodations that would permit him to continue working for the USPS — accommodations which he has the burden of establishing as reasonable. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 725 (6th Cir. 2000). His first proposed accommodation — working for half the day from a seated position and receiving assistance to lift seventy pounds or more — is not a reasonable accommodation because it would require the USPS to eliminate essential functions of the mail handler job, primarily lifting and moving large quantities of mail. *See Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir. 1985). His second and third proposed accommodations are no more reasonable. Adams requested a light-duty assignment or transfer to a mark-up clerk position. Both of these accommodations are unreasonable because the USPS would violate its CBA with the National Mail Handlers Union if it provided either of them to Adams. *See id.* at 1251-52. A light-duty assignment is governed by the CBA and requires the employee to have suffered an on-the-job injury or have five-years' experience with the USPS. Assignment to the mark-up clerk position is subject to a seniority-based bidding system. Adams is ineligible for his second and third proposed accommodations under the CBA. Providing them would violate the CBA and interfere with other employees' rights. This circuit has held that accommodations are not reasonable if they "would usurp the legitimate rights of other employees in a collective bargaining agreement." *Id.* at 1252. Therefore, Adams proposed no reasonable

accommodation that the USPS could provide for his back problems. Consequently, even if Adams's

back problems disable him, the USPS permissibly terminated his employment.

IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the

defendant.