NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 20, 2011[*]
Decided July 20, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-3985

| | |
|---|---|
| NANCY FISHER, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 09 C 6853 |
| VIZIONCORE, INC. and QUEST | |
| SOFTWARE, INC., | Suzanne B. Conlon, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Nancy Fisher, who suffers from bouts of debilitating pain from injuries sustained in a car accident, was absent on four of her first ten days after beginning work at Vizioncore, Inc., a wholly owned subsidiary of Quest Software, Inc. One absence came with advance notice to Vizioncore, two with same-day notice, and one with no notice. After the company fired her for excessive absenteeism, she sued both Vizioncore and Quest under the

---

[*] After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Therefore the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Americans with Disabilities Act, 42 U.S.C. §§ 12111-12117, claiming that they failed to make reasonable accommodations for her disability of pain. The district court granted summary judgment to both companies. Because Fisher cannot meet the essential job requirement of regular attendance, we affirm.

We construe the undisputed evidence in Fisher's favor. After posting her résumé on an employment website, Fisher received an email from a recruiter working for Vizioncore and Quest. The recruiter explained that Vizioncore and Quest sought to hire an "accountant/bookkeeper" to work with the two companies' managers and noted that "[f]lexibility to work from home 1-2 days a week is acceptable." Fisher applied for the job, and in April received via email an offer for Vizioncore's "in-house accountant" position. Before she accepted the offer, the recruiter again told her that Vizioncore would provide "flexibility and time off as needed." Fisher accepted the offer. When accepting the offer, she explained to Vizioncore that she required physical therapy twice a week for six to eight months: "This means to Vizioncore that short days about five/six hours is what I can committing [sic] to, [i]f agreed a start time of 10:00 am (after traffic slows down) till about 4:00/4:30 pm (before traffic begins again)[.] I will have my therapy appointments as late in the day as possible." Vizioncore agreed to allow Fisher to arrive at 10:00 a.m.

Fisher's start date was Thursday, April 20, 2006. On that day she signed a form acknowledging that she understood and agreed to Vizioncore's Employee Handbook. The Handbook declares the company's attendance policy: "Regular attendance is essential to Vizioncore Inc.'s efficient operation and *is a necessary condition of employment*" (emphasis in original). The Handbook also instructs that "[i]f it is impossible to report to work as scheduled, employees must call their manager before their starting time." Additionally, the Handbook advises that "[a]ll telecommuting arrangements are subject to approval by the employee's manager" and that employees should "make arrangements with their manager at least one week in advance of telecommuting."

During her first ten days of employment, Fisher missed work four times, with three absences preceded by little or no advance notice. Fisher's first absence occurred on her third day with Vizioncore. She emailed, rather than called, her manager minutes before 10:00 a.m. to say she was in pain and would arrive by noon. Later she emailed to say she would not attend work at all because of pain. She asked Vizioncore to "link" her home computer to the office computer network, but she does not dispute that Vizioncore could not "link" her home network until it resolved technical concerns about the security of its proprietary financial information. Fisher did not work on her seventh day, having previously received approval to have that day off. On the eighth day Fisher called her manager to report her second unscheduled absence, explaining that she would arrive at 11:00 a.m. because of physical therapy. But at 10:40 she reported that she would not come to work at all. She promised her manager that she would arrive early the next day to make up the time, but on

that day, her ninth, she called at 10:15 a.m. to warn that she would arrive late instead of early. Then, without any further call, she failed to show up at all. After three unscheduled absences within her first two weeks, Fisher's manager instructed her not to come to work the tenth day. The manager told Fisher that, while Vizioncore knew that she would have some "bad days" because of her pain, "the frequency of them" was too much. Vizioncore fired Fisher the next day.

In granting summary judgment to the defendants, the district court ruled that Fisher could not perform the essential function of "regular attendance (regardless of whether working at the office or from home)." It also found that her proposed accommodation, which the court described as "work[ing] from home on demand without any notice to Vizioncore," was unreasonable.

On appeal Fisher challenges both conclusions and maintains that the companies failed to accommodate her disability. To establish a prima facie case of failure to accommodate, a plaintiff must show that she is a "qualified individual with a disability" who can perform "the essential functions of the position held or desired, with or without reasonable accommodation." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (quoting 42 U.S.C. § 12111(9)). To determine a job's essential functions, we consider the employer's judgment, any written job descriptions, the consequences of not requiring the incumbent to perform the function, and the work experience of any current incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n)(3); *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). We presume that Vizioncore's judgment is correct unless Fisher offers sufficient evidence to the contrary. *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010); *Basith*, 241 F.3d at 928-29.

Fisher argues that "regular attendance" was not an essential job function, but the undisputed evidence is to the contrary. Vizioncore's Employee Handbook, which Fisher assented to, proclaims that "[r]egular attendance is essential" and "necessary" and unexpected absences must be preceded by a call to a manager before the start time. Fisher counters that Vizioncore's notion of "regular attendance" includes "flexibility" and one-to-two days per week of telecommuting. But even so tempered, the Handbook establishes and the law allows reasonable conditions on these liberties. The days on which Fisher planned to telecommute required a week's advance approval from her manger. Fisher did not and could not have obtained this permission because she expected telecommute privileges from her third day and before Vizioncore resolved its security issues. Courts endorse the right of employers to control when employees can telecommute. *See Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 897 (7th Cir. 2003) (determining that employee's proposed work-from-home accommodation was unreasonable where employee "assert[ed] that she would be at work when it is was necessary, but she also made clear that she would determine when it was necessary for her to be there"); *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538,

544-45 (7th Cir. 1995) ("[A]n employer is not required to accommodate a disability by allowing the disabled worker to work, by himself, without supervision, at home.") (collecting cases); *Law v. United States Postal Serv.*, 852 F.2d 1278, 1279-80 (Fed. Cir. 1988) (concluding that an employer "is inherently entitled to require an employee to be present during scheduled work times, and, unless an agency is notified in advance, an employee's absence is disruptive to the agency's efficient operation").

Likewise, the "flexibility" of unscheduled absences does not permit an employee to miss a full workday without calling her manager before the start of the day. Fisher violated this rule three times in her first two weeks. The first two times, she contacted her manager before her regular workday began to say that she'd be late, but then she called during the workday, retracted her promise, and stayed home entirely. The third time she promised to come in early, but then called *after* the start of her workday to say that she'd be tardy, and then never showed up at all. "[T]he ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability." *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 948 (7th Cir. 2001) (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999)); *Tyndall v. Nat'l Educ. Centers, Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) ("[A] regular and reliable level of attendance is a necessary element of most jobs."). The accommodation to "regular attendance" that Fisher seeks is an open-ended schedule with the privilege to miss workdays frequently and without notice, and to telecommute without manager approval. That is "unreasonable," so the defendants were entitled to judgment as a matter of law. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 547-48 (7th Cir. 2008); *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 n.9 (7th Cir. 2000); *Waggoner*, 169 F.3d at 485.

We can make short work of Fisher's remaining arguments. She contends that Vizioncore did not engage her in the "interactive process," *see* 29 C.F.R. § 1630.2(o)(3), to identify a potential reasonable accommodation. But she did not meet her burden to show a reasonable accommodation that, had there been an interactive process, she might have obtained. *See Mays v. Principi*, 301 F.3d 866, 870 (7th Cir. 2002); *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001). And we can bypass Fisher's argument that Vizioncore's proffered reason for firing her (the frequent absences) was a mere pretext for discriminatory intent. She never pursued a disparate-treatment claim in the district court, only a claim for failure to accommodate, so she cannot pursue it on appeal. *See, e.g., Timmons v. General Motors Corp.*, 469 F.3d 1122, 1125-26 (7th Cir. 2006).

AFFIRMED.