NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 12-3089
———

SILVIA YOVTCHEVA,

Appellant

v.

CITY OF PHILADELPHIA WATER DEPARTMENT
———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 10-cv-01462)
District Judge:  Honorable Stewart Dalzell
———

Submitted under Third Circuit LAR 34.1(a)
April 25, 2013

Before:  JORDAN, GREENBERG and NYGAARD, Circuit Judges.

(Filed: May 7, 2013)
———

OPINION OF THE COURT
———

GREENBERG, Circuit Judge.

I.  INTRODUCTION

This matter comes on before this Court on an appeal by plaintiff, Silvia

Yovtcheva, from an order of the District Court entering summary judgment against her in

favor of her former employer, defendant City of Philadelphia Water Department, on June 29, 2012, in this action under the Americans With Disabilities Act ("ADA"). As we write solely for the parties, we provide only a brief overview of the facts.

Yovtcheva began working as a water technology assistant with the Water Department's Bureau of Laboratory Services ("BLS") on February 7, 2005. BLS has two different types of laboratories, "organic" and "inorganic." In an affidavit BLS Director Geoff Brock explained that "[t]he terms 'organic' and 'inorganic' do not refer to the kind of solvents used in the labs, but, rather, to the kinds of analytes that are the subject of various procedures within each lab group." App. at 117. Chemists in both types of laboratories use organic solvents.[1]

In January 2007, the Water Department promoted Yovtcheva to the position of analytical chemist I. In July 2007, she began working on a project involving gas chromatography analysis referred to as EPA Method 551.1. In early 2008, she informed her supervisor, Earl Peterkin, that she was having health problems in the laboratory as a result of her work with methyl tertiary butyl ether ("MTBE"). At a later meeting, she informed Brock of the situation. At Brock's behest, the office's safety committee conducted a safety audit. Though the committee did not find any problems, the Water Department offered Yovtcheva the option of wearing a full-face respirator for protection while working. She was fitted with the respirator in July 2008 but only used it a few

---

[1] During Yovtcheva's tenure, the BLS did not use the organic solvent methyl tertiary butyl ether ("MTBE") in the inorganic laboratories. The BLS, however, did not rule out the possibility that it would use MTBE in the future in the inorganic laboratories.

2

times because its use made her claustrophobic and caused her to suffer a panic attack. The Water Department then offered her a partial-face respirator, but she refused to try it.

In view of the problems she was facing, Yovtcheva sought transfers to other laboratories within the BLS or elsewhere within the Water Department but the Water Department did not make the transfer that she requested as it believed that there was no suitable position available for that purpose.[2] On August 29, 2008, Peterkin gave Yovtcheva an unsatisfactory annual performance report due to her failure to conduct her work assignment. Though he recognized that she claimed "that a solvent-like 'odor' related to the project was making [her] sick," he pointed out that her "[w]ork-related sickness [had] not been validated." Id. at 453. Yovtcheva and her union representatives discussed the evaluation with the administrator of the organic laboratory. She later left work and was designated AWOL. The Water Department subsequently terminated her employment on September 12, 2008, by reason of her absences.[3] She filed a grievance challenging her termination and was reinstated on November 21, 2008.

In the absence of any changes to her job assignment after her reinstatement she went out on sick leave. On November 25, 2008, Yovtcheva filed a request for an

_____

[2] In a sense this point is immaterial because even though the transfer could have been an accommodation under the ADA, as we explain below the Water Department offered Yovtcheva a different reasonable accommodation.

[3] Dr. Alla Shipaner, Yovtcheva's personal physician, prepared a letter dated September 11, 2008, that was provided to the Water Department, explaining that Yovtcheva had a "history of asthma and allergy to chemicals. She has a history of developing rush [sic], frequent headaches and fatigue when exposed to chemical substance MTBE at work." Therefore, "avoidance of irritants, that cause her symptoms is recommended." App. at 451.

3

accommodation under the ADA supported by an accompanying medical note from a reviewing doctor.[4] On December 5, 2008, the Water Department's Human Resources ("HR") office sent a letter to Yovtcheva denying her request for an accommodation and informing her that she would be recorded as being on sick leave. On December 18, 2008, a union representative sent a written request to HR for an in-person meeting to discuss Yovtcheva's ADA accommodation request. HR responded via email by asking that Yovtcheva first submit a written request for a reasonable accommodation. After HR did not receive a reply, it followed up with a letter to the union representative on February 11, 2009, in advance of the February 19, 2009 expiration of Yovtcheva's Family and Medical Leave Act ("FMLA") leave, asking for Yovtcheva to set forth the accommodation that she sought. Yovtcheva did not respond, and she was terminated following the expiration of her FMLA leave because of her failure to return to work.

As the foregoing events were unfolding, Yovtcheva filed a state administrative claim for workers' compensation benefits that resulted in a workers' compensation judge making an award to her on February 17, 2010, for disability benefits as of September 5, 2008. The workers' compensation judge based the award on her findings that Yovtcheva "suffered dizziness and trouble breathing as a result of her exposure to MTBE in the workplace." Id. at 405.

---

[4] On January 1, 2009, non-retroactive ADA amendments took effect. The primary events in question took place prior to 2009, and Yovtcheva does not argue that the ADA amendments apply to her case.

On April 1, 2010, Yovtcheva brought this action against the Water Department in the District Court under the ADA making claims that she had suffered disability discrimination and that the Water Department retaliated against her for seeking an accommodation for her disability. The case failed in that Court when the Water Department obtained the summary judgment from which she now appeals. In its opinion the Court held that the Water Department offered Yovtcheva a reasonable accommodation by the use of the partial-face respirator but that she refused to try it. Moreover, the Court rejected her claim for retaliation predicated on her charge that the Water Department discharged her for requesting an accommodation. In making its ruling the Court refused to give preclusive effect to the findings of the workers' compensation judge.

On appeal, Yovtcheva argues that the respirator was only one of three possible accommodations that the Water Department could have made for her. Thus, she points to the possibility (1) that the Water Department could have transferred her to a different laboratory or (2) could have replaced MTBE with Pentane, another chemical, for its testing processes. Based in part on those options, she advances three arguments on this appeal.[5]

    I.    The District Court improperly held that the findings of the workers' compensation judge did not have preclusive effect in the District Court.

---

[5] In response to the Water Department's motion for summary judgment, Yovtcheva withdrew Title VII claims that she made in her complaint and did not advance claims under the Pennsylvania Human Relations Act that she had contemplated making. Appellee's br. at 3 n.2.

II.     The District Court erred in awarding summary judgment on her failure to accommodate claim under the ADA.

III.    The District Court erred in awarding summary judgment on her retaliation claim under the ADA.

## II. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review on this appeal, applying the same standard as the District Court.  See Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011).   When considering a motion for summary judgment, we "must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party."  Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001) (citation omitted).  Therefore, we will affirm an order for summary judgment only if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law."  Ruehl v. Viacom, Inc., 500 F.3d 375, 380 n.6 (3d Cir. 2007) (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Failure to Accommodate

We begin by addressing the District Court's grant of summary judgment to the Water Department on Yovtcheva's failure to accommodate claim under the ADA.  We have held that for a plaintiff to establish a prima facie case of discrimination under the ADA, he must show: "'(1) he is a disabled person within the meaning of the ADA; (2) he

6

is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."' Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (citations omitted). We explained that "[d]iscrimination under the ADA . . . includes failing to make reasonable accommodations for a plaintiff's disabilities." Id. Therefore, an employer discriminates when it "does not 'mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" Id. (alterations in original) (citing 42 U.S.C. § 12112(b)(5)(A).

There is no dispute that Yovtcheva meets the first prong of the showing necessary to survive a motion for summary judgment inasmuch as the Water Department concedes that there is a genuine issue of material fact as to whether she is disabled within the meaning of the ADA because she suffers from asthma. Accordingly, we turn to the issue of whether the Water Department offered her a reasonable accommodation for her disability. The parties dispute the specific cause of the problem Yovtcheva was facing with Yovtcheva alleging that MTBE was the only chemical that caused her a problem and the Water Department claiming that all organic solvents are off limits to her. In some cases a dispute of this kind could be critical as it could be significant in determining the accommodation necessary for an employee. But here we need not linger on the dispute for given the conflicting evidence from the assorted medical personnel who examined Yovtcheva and the need to view the evidence in the light most favorable to her, we accept

7

as a fact for purposes of this appeal that MTBE was the sole chemical that caused her problem.

Our acceptance of her claim that MTBE was the specific cause of her problem is significant because it demonstrates that she may have been able to work in a laboratory that did not employ MTBE even though there were other organic solvents used in that laboratory. Nevertheless, we do not need to discuss either the possibility that she could have been reasonably accommodated by a transfer within the Water Department or her other post-hoc proposal that the Water Department could have replaced MTBE with the organic solvent Pentane, because the uncontroverted record reveals that the Water Department offered her a reasonable accommodation by use of a partial-face respirator but that she refused to attempt to use such a respirator.

As discussed above, the Water Department fitted Yovtcheva for a full-face respirator that would have protected her from any exposure to MTBE. Yovtcheva, however, testified in her deposition that she only used the respirator "[a] couple of times. . . not more than six or seven times" before stopping because she had one panic attack while wearing it. App. at 207-08. Furthermore, Yovtcheva did not take advantage of a City of Philadelphia employee assistance program available to her which could have provided her with counseling and treatment for claustrophobia and panic attacks. Nonetheless, at the summary judgment stage, we will assume that the Water Department, though offering Yovtcheva the use of a full-face respirator, did not offer her a reasonable accommodation by that offer for the purposes of her ADA claim.

8

Even though on this appeal we do not regard the Water Department's offer to Yovtcheva to make a full-face respirator available to her as a reasonable accommodation, we agree with the District Court that Yovtcheva is not a "qualified individual" under the ADA because she refused to try the partial-face respirator made available to her. In this regard 29 C.F.R. § 1630.9(d) provides that:

> An individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept. However, if such individual rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified.

Like the District Court, we also take note of the following exchange from Yovtcheva's deposition:

> Q: You were offered a partial facial respirator; isn't that true?
> A: Yes.
> Q: Did you try that?
> A: No.
> Q: Why not?
> A: Because of the panic attacks.
> Q. So you didn't even try it?
> A. No.

App. at 208. The record in this case requires us to hold that the Water Department made an offer of a reasonable accommodation when it offered to supply Yovtcheva with a partial-face respirator for the purpose of protecting her from the effects of MTBE. In reaching this conclusion we point out that Yovtcheva only suffered a panic attack when using a full-face respirator. Furthermore, the District Court pointed out that there was expert testimony in the record that the use of either "a half or full-face respirator would

9

completely preclude the detection of any solvent odor." App. at 12. This testimony was undisputed for, as the District Court noted, Yovtcheva pointed "to no record evidence that creates a genuine dispute as to the effectiveness of the respirators in allowing her to avoid any exposure to the smell of MTBE or other organic solvents." Id. at 13.

In the circumstances, it is clear that even though not covering the entire face, a partial-face respirator could have alleviated Yovtcheva's claustrophobia problems while protecting her from the effects of exposure to any organic solvents.[6] Contrary to Yovtcheva's assertion, "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996) (citation omitted); see also Bates v. Long Island R.R. Co., 997 F.2d 1028, 1035 (2d Cir. 1993) ("[A] reasonable accommodation generally does not require an employer to reassign a disabled employee to a different position.").

B. Preclusion

We do not determine the preclusive effect of the findings in the workers' compensation proceeding because there is no factual dispute regarding Yovtcheva's refusal to attempt the use of a partial-face respirator and that refusal required the District Court to grant summary judgment against her. Nonetheless, we take note of the District Court's ruling that the workers' compensation judge's findings did not have a preclusive

---

[6] The "reasonable accommodation" requirement "'includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith.'" Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (quoting Mengine v. Runyon, 114 F.3d 415, 416 (3d Cir. 1997)).

10

effect in the proceedings in the District Court and its alternative holding, with which we agree, that even if the workers' compensation findings in some circumstances could have a preclusive effect in a district court, in this case the workers' compensation judge's narrow focus on whether Yovtcheva was entitled to benefits did not address the issue of accommodation.

Yovtcheva cites Jones v. UPS, 214 F.3d 402, 406 (3d Cir. 2000), for the proposition that a workers' compensation judge's factual findings may be given preclusive effect in subsequent ADA proceedings. Appellant's br. at 31.[7] The Water Department counters that the workers' compensation judge's findings were not reviewed by the state courts and contends that administrative rulings that are not reviewed by state courts are not entitled to preclusive effect in subsequent ADA proceedings. Appellee's br. at 32 (citing, inter alia, Pernice v. City of Chicago, 237 F.3d 783, 787 n.5 (7th Cir. 2001); Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 39 n.5 (1st Cir. 1998)). Our precedent does not clearly resolve the question of whether judicially unreviewed administrative findings can be given preclusive effect in subsequent judicial proceedings for, as the Water Department points out, in Jones, the case to which Yovtcheva points, the Pennsylvania state courts reviewed the workers' compensation judge's findings.

We recognize that "administrative estoppel is favored as a matter of general policy." Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 109, 111 S.Ct. 2166, 2170 (1991). But "its suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." Id. at

---

[7] She also cites a not precedential opinion of this Court for the same proposition.

110, 111 S.Ct. at 2170. For example, as we noted in Caver v. City of Trenton, 420 F.3d 243, 259 (3d Cir. 2005), in University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220 (1986), the Supreme Court "prohibit[ed] the use of collateral estoppel to give an unreviewed state administrative determination preclusive effect in a Title VII action." In Astoria, the Supreme Court extended the Elliott holding to ADEA actions. In Pernice v. City of Chicago, 237 F.3d at 787 n.5, the Court of Appeals for the Seventh Circuit applied the Elliott principle to claims under Title I of the ADA.[8] The Pernice court explained that in Elliott, "the Supreme Court held that a provision in Title VII directing the EEOC to give 'substantial weight' to the findings of state administrative bodies, 42 U.S.C. § 2000e-5(b), indicated Congress' intent that common law issue preclusion not apply to the findings of such bodies." Id. Given that "Title I of the ADA incorporates the same deferral procedures, 42 U.S.C. § 12117, Elliott's reasoning applies equally to ADA cases." Id. (citing Thomas, 150 F.3d at 39 & n.5).

C. Retaliation

Yovtcheva also challenges the District Court's award of summary judgment against her on her ADA retaliation claim. In order for her to establish a prima facie case of retaliation under the ADA, Yovtcheva must show: "(1) [that she engaged in] protected employee activity; (2) [there was an] adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) [that there was] a causal connection between the employee's protected activity and the employer's adverse

---

[8] Yovtcheva's claim falls under Title I of the ADA, which deals with issues of employment. See 42 U.S.C. §§ 12111-12117.

action." Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted). We agree with the District Court that Yovtcheva made a showing satisfying the first two prongs of the test but failed to satisfy the third prong.

Yovtcheva satisfied the first element when she filed an ADA accommodation request on November 25, 2008, with an accompanying medical note from a reviewing doctor. The second element was satisfied when the Water Department terminated her employment on February 19, 2009, following the expiration of her FMLA leave. But Yovtcheva failed to demonstrate that there was a causal connection between the two actions. Nearly three months passed between the two events, and we have explained that "'the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.'" Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 n.9 (3d Cir. 2003) (citations omitted); see also Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (finding a span of two months insufficiently indicative of a causal link in the absence of supporting evidence).[9] Yovtcheva attempts to overcome the tenuous temporal proximity between the events in this case by claiming that the Water Department was antagonistic toward her. See Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997) ("[A] plaintiff can establish a link between his or her protected behavior and subsequent discharge if the

---

[9] We do not doubt that in theory a disabled employee might be able to establish that there was a casual connection between her protected activity and subsequent adverse employment action that the employer took many months or perhaps even years later. There might be such a case if the employee had direct proof linking the events such as a letter from the employer indicating that it was taking the adverse employment action because the employee had engaged in protected activity at the earlier time. In this case, however, Yovtcheva has not advanced any such evidence.

13

employer engaged in a <u>pattern of antagonism</u> in the intervening period.") (emphasis added) (footnote omitted). She specifically points to the February 11, 2009 letter in which HR followed up with Yovtcheva's union representative in advance of the impending expiration of her FMLA leave. This letter followed the December exchanges between HR and the representative regarding Yovtcheva's status.

Yovtcheva's formal ADA accommodation request described the following reasonable accommodations as necessary: "Avoid any type of work where she would have exposure to organic solvents. Transfer to another line of work. Avoidance of irritants." App. at 348. Based on a review of the job specifications for Yovtcheva's employment classification, HR informed Yovtcheva on December 5, 2008, that the Water Department was denying the accommodation request. Yet HR concluded its letter by noting that "the Water Department remain[ed] willing to consider any request [Yovtcheva] might make for a reasonable accommodation of a qualifying disability." App. at 351. In response, the representative submitted a written request for a meeting on December 18, 2008, because she "believe[d] that there [were] approaches that could be tried which would meet [Yovtcheva's] medical restrictions and still meet the department's operational needs." App. at 352. In the absence of any specifics, HR replied via email letter on December 29, 2008, reiterating that Yovtcheva should submit a written request for a reasonable accommodation. Yovtcheva, however, did not respond to the email but HR nevertheless followed up with another letter on February 11, 2009, in advance of the expiration of Yovtcheva's FMLA leave again seeking to have Yovtcheva file the request for the accommodation.

14

The foregoing February correspondence forms the basis of Yovtcheva's retaliation claim. Yet HR's letter hardly is indicative of an antagonistic attitude; rather, HR took it upon itself to remind Yovtcheva of her employer's "willing[ness] to consider any request [she] might make for a reasonable accommodation of a qualifying disability." App. at 473. Contrary to what Yovtcheva indicates in her brief, no reasonable jury could find that HR was actually "feigning lack of knowledge of Plaintiff's condition and of her requested accommodation" in an attempt to antagonize her regarding her situation. Appellant's br. at 34. The Water Department was offering Yovtcheva a final chance to respond prior to her termination at the expiration of her FMLA leave. In the circumstances, Yovtcheva failed to make out a prima facie retaliation claim and thus the District Court correctly granted summary judgment against her on that claim.[10]

## IV. CONCLUSION

For the reasons set forth above, we will affirm the District Court's order for summary judgment of June 29, 2012.

_____

---

[10] The District Court also granted summary judgment on the grounds that Yovtcheva could not "show that the City's proffered reason for her termination was pretextual." App. at 18.

15