IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harold Richard Garten,                         :
                              Petitioner        :
                                                :
            v.                                  :      No. 621 C.D. 2019
                                                :      Submitted: February 14, 2020
Pennsylvania Human Relations          :
Commission,                                     :
                              Respondent       :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                               FILED: December 10, 2020

            Harold Richard Garten, sole owner of Above All Chimney & Masonry
(Employer), petitions for review from an order of the Pennsylvania Human Relations
Commission (PHRC) adopting the hearing examiner's findings and conclusions that
enforcement of his dress code to refuse David Riccardi's (Complainant) requested
accommodation to wear sweatpants at work constituted disability discrimination
under Section 5(a) of the Pennsylvania Human Relations Act (Act),[1] 43 P.S. §955(a).
The PHRC awarded backpay, plus interest, for the six months Complainant collected
unemployment compensation (UC) benefits. Employer asserts Complainant was not
qualified to perform masonry work if he could not refrain from wearing sweatpants. He
also argues neutral enforcement of his dress code did not evince discrimination.
Because the PHRC did not assess the reasonableness of the accommodation, or make
related findings, we vacate and remand so it may do so on the existing record.

_____

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-963.

# I. Background

Complainant was born with exstrophy of the bladder requiring rerouting of his urethra through his anus and the loss of a kidney and part of his colon. Surgeries in his late teens resulted in severe scarring and a hole in his pubic area that remains open. Polyps develop around the hole which are surgically removed. When chafed by tight clothing, and zippers in particular, the area becomes irritated and may bleed. Complainant generally wears sweatpants to prevent irritation.

Complainant held different unskilled jobs (landscaper, commercial truck driver, and factory worker) before he began working for Employer in March 2013. He operated his own landscaping business between 1998 and 2007.

Employer, sole proprietor of his small business, is a certified chimney sweep and manages four employees generally. He hires additional employees during the mowing season. Reproduced Record (R.R.) at 118a-19a. Employer's business is comprised of two parts, landscaping work and chimney/masonry work. The masonry part involves some customer interaction and is performed at times in their homes, whereas the landscaping part is performed only outdoors and is seasonal. For both parts of the business, Employer has a dress code which requires all workers to wear a company shirt with a logo. R.R. at 48a. Relevant here, for the masonry work, Employer's dress code also requires workers to wear either jeans or workpants to project a "professional" image of the company. Hr'g Examiner Recommendation (Exam'r R.), 3/6/19, Finding of Fact (F.F.) No. 44. For landscaping, employees are permitted to wear sweatpants or shorts; as a result, Complainant was able to wear sweatpants for his first several months of working for Employer without incident. *See* R.R. at 56a.

2

Employer hired Complainant as a landscaper in March 2013. Primarily, Complainant mowed grass. At the end of the season, Employer could have laid off Complainant. However, Employer retained Complainant to perform masonry work, mixing concrete and bringing materials to the work site in customers' homes. Employer increased his pay to $13.00 per hour in October 2013.

Initially, Complainant continued to wear sweatpants while working on the masonry side. After Employer told Complainant about the dress code, however, Complainant wore workpants for a couple of days. He stopped because the zipper irritated his abdominal scarring and pubic area. In November 2013, Complainant informed Employer he needed to wear pants without a zipper based on his medical condition. Employer advised Complainant he was not permitted to wear sweatpants because the job involved customer interaction. Despite the dress code, Complainant came to work in sweatpants. Employer sent Complainant home, telling him to return when he was wearing suitable pants. Complainant did not return.

Following his last day of work in November 2013, Complainant filed for and received UC benefits for six months. Shortly thereafter, in May 2014, Complainant filed a complaint for disability discrimination with the PHRC, stating he "cant [sic] ware [sic] [a] zipper." Suppl. R.R. (S.R.R.) at 13b.

Subsequently, the PHRC investigated and found probable cause for Complainant's discrimination claims. After three years of attempted conciliation, in 2017, the PHRC scheduled a public hearing. In June 2018, a hearing examiner held a hearing at which Complainant and Employer testified.

As to his disability, Complainant testified that due to scarring around his abdomen and an open hole in his pubic area, he cannot wear tight clothing or pants with a zipper. He emphasized the zipper aggravates this area whereas he can wear

3

sweatpants comfortably. He admitted he did not reveal his disability to Employer when he started since landscapers could wear sweatpants. He agreed Employer told him sweatpants were unacceptable for masonry, and to wear jeans or workpants to look professional. He recalled Employer told another employee to stop wearing sweatpants at the time. When Complainant tried to show his pubic area to prove his medical condition, Employer did not look and insisted Complainant wear workpants.

As to damages, Complainant testified he looked for employment to meet the eligibility requirements for UC benefits, but after the first six months, he "didn't really look." F.F. No. 65; R.R. at 96a. Complainant did not work again until he reopened his landscaping business in 2016.

Employer testified about Complainant's noncompliance with the dress code despite repeated discussions. *See* R.R. at 142a. He did not question Complainant's disability. Employer also did not require workers to wear jeans; in his discussions with Complainant about his attire, Employer suggested alternatives to jeans and sweatpants, including pull-up workpants. *See* R.R. at 144a. After sending Complainant home to change his pants on his last day, Employer thought he would return to work.

Based on the evidence presented at the hearing, the hearing examiner found that Employer has a dress code requiring employees to look presentable when representing the company. F.F. No. 44. He also found the parties "argued about [Complainant's] medical condition and, for several days, went back and forth regarding what [Complainant] could wear to work," F.F No 49, and Complainant admitted Employer told him not to wear sweatpants for masonry work. Nonetheless, "[u]pon returning to work [after discussions], [Complainant] was wearing sweatpants." F.F. No. 59. Then, "[o]n November 20, 2013, [Employer] sent [Complainant] home,

4

in effect, telling him he was not permitted to return to work unless he changed into appropriate pants that look professional." F.F. No. 61. Complainant "did not return as he considered that he had been terminated." F.F. No. 62.

Ultimately, the hearing examiner concluded that Employer terminated Complainant based on his disability. *See* R.R. at 143a-72a. Because Complainant only looked for work for the first six months of his unemployment, the hearing examiner awarded backpay for the six-month period at the rate of $520.00 per week.

In April 2019, the PHRC issued an order approving the hearing examiner's findings and conclusions, adopting his opinion. As such, the PHRC's order directed Employer's payment of $13,520.00 in backpay, plus interest of 6% per annum, and parking expenses. R.R. at 173a-75a. Employer petitioned for review.

## II. Discussion

On appeal,[2] this Court must consider whether Employer refused a reasonable accommodation to Complainant for his disability when he denied Complainant's request to wear sweatpants for the masonry job.

## A. Reasonable Accommodation Standard

The PHRC concluded Employer discriminated against Complainant based on disability when he enforced the dress code, refusing to allow Complainant to wear sweatpants on the masonry job. Section 5(a) of the Act states:

> It shall be unlawful discriminatory practice . . . for any employer because of the . . . non-job related handicap or disability . . . of any individual to refuse to . . . employ . . . such individual, or otherwise discriminate against such individual . . . if the individual  . . . is the best able and most competent to perform the services required . . . .

---

[2] Our review is limited to determining whether there was a violation of constitutional rights, or an error of law, or whether the findings of fact necessary to support the decision are supported by substantial evidence. *Consol. R.R. Corp. v. Pa. Hum. Rels. Comm'n*, 582 A.2d 702 (Pa. Cmwlth. 1990).

5

43 P.S. §955(a). PHRC regulations require consistent construction "with other relevant Federal and State laws and regulations except where the construction would operate in derogation of the purposes of the Act . . . ." 16 Pa. Code §44.2(b).

To show a *prima facie* case of discrimination, a complainant must prove that: (1) he is disabled; (2) he is a "qualified individual";[3] and (3) he was discriminated against because of his disability by way of the employer's failure to provide a reasonable accommodation. *See* Hr'g Exam'r R., Conclusion of Law (C.L.) No. 5. *See also Canteen Corp. v. Pa. Hum. Rels. Comm'n*, 814 A.2d 805, 811 (Pa. Cmwlth. 2003); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999); *Mengine v. Runyon*, 114 F.3d 415 (3d Cir. 1997).

"Disability[,]" as defined in the Americans with Disabilities Act (ADA), 42 U.S.C. §§12101-12213, is virtually identical to the Act. *Lazer Spot, Inc. v. Pa. Hum. Rels. Comm'n* (Pa. Cmwlth., No. 459 C.D. 2017, filed Feb. 2, 2018), 2018 WL 670621 (unreported).[4] Thus, "Pennsylvania courts generally interpret the [Act] in accordance with its federal counterparts." *Id.*, slip op. at 7-8, 2018 WL 670621, at *4. Like the federal courts, the "reasonable accommodation standard" is the standard we apply to discern whether an employer committed disability discrimination under the Act. *Canteen*, 814 A.2d at 811.

An employer has a duty to afford a *reasonable* accommodation to a disabled employee, not a duty to provide an employee's requested accommodation. *See Hofacker v. Wells Fargo Bank Nat'l Ass'n*, 179 F.Supp.3d 463 (E.D. Pa. 2016);

---

[3] A "qualified individual" "has the requisite skill, experience, education and other job-related requirements of the position sought; and . . . with or without reasonable accommodation, can perform the essential functions of that position." *DuBoice v. Pa. Hum. Rels. Comm'n* (Pa. Cmwlth., No. 53 C.D. 2019, filed Jan. 23, 2020), slip op. at 8, 2020 WL 373514, *4 (unreported) (citation omitted).

[4] We cite this case for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

*Yovtcheva v. City of Phila. Water Dep't*, 518 F. App'x 116 (3d Cir. 2013); *Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 484 (8th Cir. 2007) ("[A]n employer is not required to provide a disabled employee with an accommodation that is ideal from the employee's perspective, only an accommodation that is reasonable."). Providing the requested accommodation is not the legal standard; "the employer need only provide some reasonable accommodation." *Yovtcheva*, 518 F. App'x at 122. Despite that the hearing examiner recognized the correct legal standard, *see* C.L. No. 5, the word "reasonable" is conspicuously absent from his other conclusions, stating "an accommodation" without the crucial modifier "reasonable."[5] Omission of one word of a two-word legal standard matters. By not assessing the reasonableness of the accommodation, the factfinder neglected a critical part of the analysis that may affect the outcome.[6]

---

[5] In pertinent part, the hearing examiner made the following conclusions of law.

6. [Complainant] established a *prima facie* case of disability discrimination.
   a. [Complainant] established that he has a disability.
   b. [Complainant] established that he was qualified to do the job of laborer in Employer's Chimney/Masonry business.
   c. [Complainant] established that on November 20, 2013, he suffered an adverse employment action in the form of Employer's denial of an accommodation and termination of him.

7. [Employer] articulated that [Complainant] was denied an accommodation and terminated because [Complainant] refused to adhere to [Employer]'s dress code policy.

8. [Complainant] has proven by a preponderance of the evidence that [the] denial of an accommodation of his medical condition and . . . termination of him were because of his disability.

Hr'g Exam'r R., C.L. Nos. 6-8.

[6] Compounding the problem, in its brief, the PHRC used the modifier "requested" instead of reasonable multiple times. *See* PHRC Br. at 23, 24, 25.

Further, the reasonableness of a requested accommodation is gleaned through the interactive process, which requires both parties to discuss the options in good faith in light of their respective interests. *Mengine*. An employer's dress code is one such interest.[7] "This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." *Taylor*, 184 F.3d at 316 (citing 29 C.F.R. §1630.2(o)(3)).

The import of the modifier "reasonable" as opposed to "requested" is clear; the former evinces an objective standard reached by mutual negotiation during the interactive process whereas the latter is subjective, elevating the chosen accommodation from the perspective of the disabled employee alone.[8]

Ultimately, the PHRC decision does not enable this Court to evaluate the critical issue of whether Employer refused a "reasonable" accommodation. The reasonableness of an accommodation is vital to any determination that disability discrimination (based on refusal of a reasonable accommodation) occurred. Similarly, the assessment of whether the requested accommodation is reasonable is part of the

---

[7] The Equal Employment Opportunity Commission (EEOC) guidelines recognize a dress code imposed to "promote a certain image" is permitted, and weighs in the assessment of the accommodation. Reproduced Record at 141a. Significantly, federal courts analyzing the distinction between a reasonable accommodation and requested attire held an employer is not required to waive its dress code to allow specific clothing that does not comply when other clothing options accommodate an employee's disability. *See Kintz v. United Parcel Serv., Inc.*, 766 F. Supp. 2d 1245 (M.D. Ala. 2011) (employer's refusal of requested accommodation of wearing shorts over leg brace was not rejection of reasonable accommodation); *Alpert v. Dekalb Office Env'ts, Inc.*, 206 F. Supp. 2d 1280, 1287 (N.D. Ga. 2001) (visible biker shorts not a reasonable accommodation for employee's knee injury when long dress or loose pants to same end consistent with professional image; reasoning "[t]he ADA does not provide a legal right to wear biker shorts"); *Jackson v. Analysts Int'l Corp.*, 956 F. Supp. 1568 (D. Kan. 1997) (assessing dress shirt and tie requirement against broken clavicle).

[8] Complainant also bore the burden to prove: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for [his] disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 335 (M.D. Pa. 2015).

8

assessment of whether an employer failed to engage in the interactive process in good faith. As such, a remand to the PHRC to make pertinent findings and legal conclusions regarding the reasonableness of the accommodation is appropriate. *See, e.g., Vista Health Plan, Inc. v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 660 C.D. 2017, filed May 31, 2018), 2018 WL 2436329 (unreported); *Bell Beverage v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 49 (Pa. Cmwlth. 2012); *Pike Cnty. Light & Power Co. v. Pa. Pub. Util. Comm'n*, 487 A.2d 118 (Pa. Cmwlth. 1985).

### B. Backpay

As it is unclear whether the findings on remand will support a determination of disability discrimination under the reasonable accommodation standard, we do not reach the backpay issue.

### III. Conclusion

In seemingly conflating a requested accommodation with a reasonable accommodation, the PHRC erred. Because this Court cannot evaluate whether the PHRC correctly concluded Employer engaged in disability discrimination without an examination of the reasonableness of the requested accommodation, we vacate the PHRC's order and remand this matter to the PHRC with instructions to make appropriate findings and conclusions on the reasonable accommodation analysis on the existing record. On remand, in determining whether the requested accommodation of sweatpants was reasonable, the PHRC is directed to consider the medical necessity here, which is the need to wear pants without a zipper. The PHRC shall also consider the interactive process, and whether an accommodation was feasible without requiring a complete waiver of Employer's dress code policy.

_____
J. ANDREW CROMPTON, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harold Richard Garten,                  :
                        Petitioner      :
                                        :
        v.                              :    No. 621 C.D. 2019
                                        :
Pennsylvania Human Relations            :
Commission,                             :
                        Respondent      :

# **O R D E R**

**AND NOW**, this 10th day of December 2020, the order of the Pennsylvania Human Relations Commission (PHRC) is VACATED, and the matter is REMANDED to the PHRC with instructions to issue a new decision containing additional findings of fact and conclusions of law regarding the reasonableness aspect of the "reasonable accommodation" standard based on the existing record.

Jurisdiction relinquished.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Harold Richard Garten, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 621 C.D. 2019 |
| | : | Submitted: February 14, 2020 |
| Pennsylvania Human Relations | : | |
| Commission, | : | |
| Respondent | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                                         FILED: December 10, 2020

Respectfully, I dissent.  The majority holds that the Pennsylvania Human Relations Commission's (PHRC) adjudication does not enable this Court to evaluate whether Harold Garten, the sole proprietor of Above All Chimney & Masonry (Employer), refused to provide his employee, David Riccardi, with a "reasonable" accommodation for his medical condition.  The majority remands so the PHRC can tell the Court whether Riccardi's request to wear sweatpants to perform masonry work was reasonable.  A remand is unnecessary, however, in light of Garten's failure to negotiate in good faith with Riccardi.  I would affirm.

Under the legal analysis applicable to this case, once an employee informs his employer of his "*need* for a reasonable accommodation," the employer has "the obligation to initiate an interactive process."  *Canteen Corp. v. Pennsylvania Human Relations Commission,* 814 A.2d 805, 813 (Pa. Cmwlth. 2003) (emphasis added).  The interactive process is "aimed at determining the disabled

employee's limitations and any possible way of accommodating them." *Id.* at 812. Further, "[a]ll that is necessary to request a reasonable accommodation is that the disabled employee makes clear his or her want of assistance or accommodation." *Id.* at 813. Thereafter, if the interactive process fails, a reviewing court "must isolate the cause of the breakdown and then assign responsibility. … '[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary.'" *Id.* (quoting *Taylor v. Phoenixville School District*, 184 F.3d 296, 312 (3d Cir. 1999)).

The PHRC found, as fact, that Riccardi informed Garten of his need for a reasonable accommodation. It also found, as fact, that Garten shirked his responsibility to engage in the interactive process. These findings are supported by the record and binding on this Court.

According to Riccardi's credited testimony, he informed Garten of his medical condition and explained how it prevented him from wearing jeans or other tight fitting pants. In doing so, Riccardi "ma[de] clear his … want of assistance or accommodation." *Canteen,* 814 A.2d at 813. However, Garten was uninterested in learning about Riccardi's medical condition and never requested a doctor's note or an independent medical examination. Riccardi also credibly testified that Garten told him that "if you can't wear jeans you cannot have a job." Hearing Transcript, 6/7/2018, at 67; Reproduced Record at 62a. The PHRC rejected Garten's version of events, including his testimony that he discussed other clothing options with Riccardi.

In short, the factual findings of the PHRC support its conclusion that Garten was responsible for the breakdown in the interactive process by giving Riccardi an ultimatum. Whether Riccardi's request to wear sweatpants was a

reasonable accommodation is beside the point given the PHRC's finding that Garten refused to enter into a discussion of their options.

Even so, the reasonableness of Riccardi's request is a legal question that can be decided on the existing record. As explained by the PHRC, Garten offered no evidence that the dress code was a job-related requirement. His testimony that he wanted all of his employees to have the same professional appearance is insufficient. As the PHRC noted, more convincing evidence would be necessary, such as customer complaints about underdressed employees having a negative impact on Employer's revenue stream, or evidence that wearing jeans enhances worker safety. Garten did not present a legitimate business-related justification for his prohibition on Riccardi wearing sweatpants.

Employer raises an additional issue, *i.e.*, that the PHRC erred in awarding Riccardi back pay in the absence of substantial evidence that he attempted to mitigate his damages. "The burden of mitigation imposed on a complainant is not onerous and does not require success." *Canteen*, 814 A.2d at 815. "All that is required is an honest, good faith effort." *Id*. Here, the PHRC credited Riccardi's testimony that during the six-month period after his separation from Employer, while he was collecting unemployment benefits, he applied for masonry and landscaping jobs through the Department of Labor and Industry's computer system. Employer cites no authority for the proposition that Riccardi had to offer documentary evidence of his job search. Based upon Riccardi's credited testimony, the PHRC did not abuse its discretion to fashion a remedy by awarding him back pay for the six months following the termination of his employment.

Riccardi informed Garten of his "need for a reasonable accommodation." *Canteen,* 814 A.2d at 813. This triggered the interactive process

in which Garten refused to participate. The majority reverses the order of the process by requiring the PHRC to determine whether Riccardi's request to wear sweatpants was a reasonable accommodation even though Garten did not engage in the interactive process. The majority conflates the concepts of "requested accommodation," which triggers the process, and "reasonable accommodation," which is the result of the process. Stated another way, it is the interactive process that determines whether a requested accommodation is reasonable.

_____
MARY HANNAH LEAVITT, President Judge